Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of MARGARET J. HERNON, Respondent, for Compensation under the Workmen's Compensation Law, for the Death of Her Son EDWARD J. HERNON, against WILLIAM L. HOLAHAN, Employer, and LONDON GUARANTEE AND ACCIDENT COMPANY, Insurance Carrier, Appellants.

Third Department, March 6, 1918.

**Workmen's Compensation Law — award for death resulting from sunstroke — evidence — appeal — insurance carrier cannot object to hearsay statements and declarations introduced by itself or received without objection.**

An award may be made under the statute for the death of an employee as the result of sunstroke.

Evidence examined, and *held,* sufficient to establish death from sunstroke.

Where proof of the cause of death is composed chiefly of hearsay statements and declarations either introduced by the insurance carrier itself or received without objection, the carrier cannot on appeal object that such statements were incompetent and of no probative value.

APPEAL by the defendant, William L. Holahan, and another, from an award of the State Industrial Commission, entered in the office of said Commission on the 17th day of August, 1917.

*William Butler,* for the appellants.

*Merton E. Lewis, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], and *Robert W. Bonynge,* counsel for the State Industrial Commission, for the respondents.

H. T. KELLOGG, J.:

This award was made to compensate for the death of an employee found by the Commission to have died as the result of sunstroke. If such was the cause of death there is sufficient authority to justify the award. (*Days v. Trimmer & Sons, Inc.,* 176 App. Div. 124; *State ex rel. Rau v. District Court,* 164 N. W. Rep. 916; *Kanscheit v. Garrett Laundry Co.,* Id. 708.) The only serious question presented is whether or not sunstroke as a cause of death was established by competent evidence.

The deceased on the morning of August 23, 1916, was assisting in the unloading of lumber from a railroad box car which was upon a float lying alongside a pier projecting into

the North river. The maximum official temperature on that day was ninety and the humidity was eighty-two, which was excessive. The maximum temperature on August twenty-second was ninety-four, and on August twenty-first, ninety. Deceased had been sick on the day previous, and had spent the night of August twenty-second sitting in a chair in a saloon. A coemployee came to the saloon for him at about seven o'clock on the morning of August twenty-third. He told his coemployee that he had been up all night vomiting, and was not fit for work. However, he went to the pier, and from about eight o'clock to eleven-thirty in the morning was intermittently engaged in the unloading of lumber. Sometimes he worked inside the car, and sometimes outside in the hot sun. He complained of being sick and had to rest. He wished to leave the work, but was persuaded to remain until about eleven-thirty o'clock. He was seen about twelve o'clock, and at six that evening was found lying dead among the lumber piles. No physician was sworn on the hearings to testify to the cause of death.

There were seven hearings upon this claim. The claimants were unrepresented at the first hearing, which, however, was attended by an attorney for the insurance carrier, who placed witnesses upon the stand, and conducted an examination. He opened the proceedings with the following statement: "This is a case where the man was found in the assured's yard, having been overcome by the heat." He presented to the Commission the inquisition of the coroner in the case of this deceased, and called their attention to the following statement therein: "Came to his death 2323/16 [sic] at 542 W. 57th Street by heat insolation." He called the employer to the stand, who testified that a coemployee of the deceased told him that the deceased was "all in" and "had a touch of the heat." The employer further testified, without objection, that the deceased himself told him that he was "all in," to which statement the employer replied, "Rest up, probably the heat has got you a little." A statement was also offered by the attorney for the insurance company which had been made by a coemployee of the deceased in which it is stated, "He [deceased] had told me that morning that once before he had been hit with the heat, and couldn't stand working in any

great heat." It was further proven that deceased told his employer that he blamed the heat for his illness

It will be observed that the proof of sunstroke is chiefly made up of hearsay statements and declarations. These statements, however, were either introduced by the insurance carrier itself or were received without objection. The carrier cannot now be heard to claim that such statements were incompetent and had no probative value. " Nothing is more common than for testimony to be given which is not, in its nature, strictly competent, upon matters about which both parties are conscious that there is no dispute — matters which both fully understand to be true. And such evidence is taken because the adverse party makes no question of the fact it tends to establish. He can never be permitted to say, on appeal, that the fact was not proved because the evidence offered and received was not competent testimony, and ought to have been objected to and rejected." (*Flora* v. *Carbean*, 38 N. Y. 111.)

The award should be affirmed, with costs.

Award unanimously affirmed.