Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of LOUISE RICHARDSON, Dependent Mother, and ELMER RICHARDSON, Infant Son, Respondents, for Compensation under the Workmen's Compensation Law, for the Death of ELMER RICHARDSON, *v.* HARRY GREENBERG, Uninsured Employer, Appellant.

Third Department, May 19, 1919.

**Workmen's Compensation Law — glanders contracted without previous accidental injury — claim for death resulting from said disease dismissed — when disease compensable — " accident " and " injury " not synonymous.**

Glanders is a disease which, when contracted without previous accidental injury occurring in the course of employment, cannot be classed under the Workmen's Compensation Law as an accidental injury arising out of and in the course of employment.

Hence, where a stableman while leading a horse affected with glanders contracted the disease through inhalation of the bacteria of glanders and died therefrom, his death was not due to an accidental injury arising out of and in the course of his employment, and a claim therefor should be dismissed.

A disease, to be compensable under the Workmen's Compensation Law, must follow not merely accident but injury as well.

The words " accident " and " injury " are not synonymous.

KELLOGG, P. J., and COCHRANE, J., dissented, with opinion.

APPEAL by the defendant, Harry Greenberg, from an award of the State Industrial Commission, entered in the office of the clerk of said Commission on the 1st day of July, 1918, and also from the findings of said Commission entered in said clerk's office on the 11th day of December, 1918.

A question is certified by the State Industrial Commission to the Appellate Division.

*David Batt,* for the appellant.

*Charles D. Newton, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

H. T. KELLOGG, J.:

The State Industrial Commission has certified to this court the following question: " Was the contraction of glanders, under the circumstances as found by the Commission, which resulted in the death of Elmer Richardson, an accidental injury arising out of and in the course of his employment within the meaning of the Workmen's Compensation Law? " The findings made by the Commission are substantially to this effect: That Elmer Richardson was employed as a stable man by Harry Greenberg; that while so employed he was required to lead a horse affected with glanders through the streets of the city of New York; that during this journey he contracted glanders; that the disease was contracted through inhalation of the bacteria of glanders; that he died from the disease of glanders fourteen days thereafter; that his death was due to an accidental injury arising out of and in the course of his employment. The Commission also made an award to a dependent mother and son, from which award an appeal has been taken.

Compensation is payable by an employer only " for the disability or death of his employee resulting from an accidental personal injury." (Workmen's Compensation Law, § 10.) Of such an injury the definition is given: " ' Injury ' and ' personal injury ' mean only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom." (Workmen's Compensation Law, § 3, subd. 7.) Had it been the intention of the Legislature to include within the meaning of " injury " or " personal injury " all diseases of whatever nature, it would not have been necessary expressly to mention, in addition to " accidental injuries," " such disease or infection as may naturally and unavoidably result therefrom." This express mention of a disease which is the consequence of

injury would seem to exclude all diseases which are not. The particular disease must " result " from " accidental injuries " — that is to say it must be preceded by such injury, and, therefore, cannot constitute the injury which it follows. Evidently " disease " and " accidental injuries " are in contrast with each other, so that the former is not comprehended by the latter, except when it follows the, latter as a natural consequence thereof. The Workmen's Compensation Law was drawn with painstaking care and it cannot be supposed that words and phrases found therein, particularly in the defining clauses, were needlessly, meaninglessly or obscurely used. The plain meaning of its words, without the aid of judicial interpretation, induces the conclusion that the Legislature intended to make compensable no condition or death resulting from disease, unless the disease itself followed a traumatic injury or other injury not partaking of the nature of a disease.

The construction suggested would accord with the interpretation given by decisions to the phrase " accidental injury " as employed in policies of insurance against accident and permit awards only where recovery would be permitted under such policies. Thus it was held in *Bacon* v. *U. S. M. A. Assn.* (123 N. Y. 304) that death due to malignant pustule, commonly called anthrax, caused by anthrax bacteria entering the pores of the skin at points where there were no abrasions, resulted from disease and not from accidental injury. On the other hand, we find that diseases naturally resulting from traumatic injuries have been held to be the subjects of insurance against accidental injuries. Thus in *Bailey* v. *Interstate Casualty Company* (8 App. Div. 127) blood poisoning arising from the injection of an infected hypodermic needle into the flesh to a depth not intended, was held to be covered by a policy insuring against accidental injury. In *Lewis* v. *Ocean Accident & G. Corp.* (224 N. Y. 18) death resulting from inflammation of the brain, in turn caused by bacteria entering the blood current through a punctured pimple, was held to be due to accidental injury. The court said: " The punctured wound is an adequate cause. The evidence suggests no other."

There are no decisions under the Workmen's Compensation Law which are opposed to the construction of that law herein suggested. In *Hiers* v. *Hull & Co.* (178 App. Div. 350) an

award for a death from the disease of anthrax which was caused by anthrax bacteria entering the tissues through abrasions or fissures in the skin was upheld, but in that case the fissures themselves were occasioned by accidents occurring in the course of and growing out of the employment. In *Matter of Horrigan* v. *Post-Standard Co.* (224 N. Y. 620) an award for the death of an employee was upheld where the employee placed an injured hand in a urinal which he was cleaning, and thus received an infection from the results of which he died. The memorandum in that case does not disclose the fact that the injury to the hand occurred in the course of the employment. However, an examination of the record shows that the Commission made a finding that a wound upon the hand opened while the employee was cleaning the urinal, so that accidental injury in the course of the employment preceded the infection. In *Hart* v. *Wilson & Company, Inc.* (186 App. Div. 926), in which no opinion has been reported, an award for a death from lockjaw was upheld where an employee having cracks and crevices in his fingers constituting a species of eczema, contracted the disease of lockjaw while working among hides containing the bacteria of tetanus. The record in that case discloses that the cracks and crevices in his fingers were the natural consequences of his work in water as a wool sorter, and thus accidental injury in the course of employment preceded the contraction of lockjaw. These three cases, therefore, all fall within the express terms of the Workmen's Compensation Law which permit recovery for the consequences of disease when the disease itself is the result of injury. There are also numberless cases in which awards for disabilities or death have been sustained where traumatic injuries aggravating, but not causing, diseases, were involved. It is true that the diseases in these cases did not " result " from " accidental injuries " within the meaning of the definition now under consideration, since the diseases pre-existed the injuries. However, the Workmen's Compensation Law, in section 10, as already noted, provides for compensation " for the disability or death " of an employee " resulting from an accidental personal injury," and in these instances the disabilities or deaths all resulted from such an injury though the diseases involved did not. These cases,

therefore, are not in the least significant upon the question now under consideration.

It is a matter of common knowledge that the conditions generally prevailing in cases of infectious disease are caused by poisons or toxins exuded by living organisms or bacteria present within the human body. " It may now be stated as an accepted fact that all the important results of bacteria in the tissues are due to poisonous toxins formed by them." (Ency. Brit. subject " Bacteriology.") It is in this respect that a condition of disease differs from a condition resulting from the taking of a poisonous drug. In the former all the poisons which harm or kill are generated within the human body, while in the latter all the poisons are extraneous. It is one of the characteristics of injuries that they are the result of the application to the human body, internally or externally, of an external force. Years of study and consideration given by insurance experts to the subject of accidental injuries have resulted in the framing of policies of accident insurance to cover as a general rule only those injuries which are caused by " external, violent and accidental means." (1 C. J. 489.) Death resulting from asphyxiation has been held to be due to such a cause. (*Paul* v. *Travelers' Ins. Co.*, 112 N. Y. 472.) In that case it was said: " As to the point raised by the appellant that the death was not caused by external and violent means, within the meaning of the policy, we think it a sufficient answer that the gas in the atmosphere, as an external cause, was a violent agency, in the sense that it worked upon the intestate so as to cause his death. That a death is the result of accident, or is unnatural, imports an external and violent agency as the cause." We have held that death from sun-stroke, and disabilities from frost bite are accidental injuries which are compensable. (*Hernon* v. *Holahan*, 182 App. Div. 126; *Days* v. *Trimmer & Sons, Inc.*, 176 id. 124.) It may be that in such instances no violence is present, but it is undeniably true that in each the producing cause is an external force. In disease the cause is neither " external," " violent " nor " accidental." It can, therefore, never be an " accidental injury " except where a statute expressly includes it therein by particular definition.

In order to support the conclusion that certain diseases

of the character under consideration are accidental injuries various arguments have been advanced to show " external," " violent " or " accidental " means to be involved as causes.

A familiar argument is that such diseases are produced by " external " means because the bacteria which cause them are introduced into the human body from without. Bacteria are daily received into the body, by contact or inhalation, without resultant disease. The fact of their presence is not the fact of disease. As pointed out, disease results only from the toxins which the bacteria produce while within the body, and the cause is native, not foreign, to that body. The argument would place substantially every infectious disease in the injury class, since in nearly every instance such a disease is produced by bacteria which are the outgrowth of bacteria introduced into the body from without.

Another argument is that in certain diseases the cause is " violent " because of the impact of bacteria when they invade the body. Thus it was remarked by MACNAGHTEN, L. J., in *Brintons, Ltd.,* v. *Turvey* (7 W. C. C. 1) concerning the contraction of anthrax: " It was an accident that the thing struck the man on a delicate and tender spot in the corner of his eye." And of the decision in that case it was said in *Steel* v. *Cammell, Laird & Co., Ltd.* (L. R. 2 K. B. [1905] 232) by COZENS-HARDY, L. J.: " There the impact of the bacillus upon the particular spot where the disease developed was proved as a fact." In a dissenting opinion in the case before us the presiding justice, doubtless in deference to the high authority of these utterances, makes this statement concerning the disease under consideration: " The presence of the disease in man, therefore, indicates that, with more or less force, infectious germs have been carried from the diseased horse to the man." It seems to me that the reasoning thus adopted is not sound, and that it illustrates the strain to which those who seek to make disease synonymous with injury are put when they try to justify their conclusions. Is it not an extraordinary argument that there is a blow, a traumatism, a violent act involved, when microscopic organisms whose bodies are not visible, whose touch cannot be felt, whose presence cannot be known, pass into the lungs with the air by which they are carried, or into the blood through

open sores which that air touches? Granted that there is an impact of bacteria whenever they enter the body, so that accidental injury occurs, then every day of our lives we receive accidental injuries, for daily we breathe in bacteria or take them into our systems without resultant disease. Once more, the argument fails unless we are to include all infectious diseases within the class of accidental injuries.

A further argument is made that in cases of the character under consideration there is accidental injury because there is an "accidental means" or occurrence involved in the inception of the disease. The argument overlooks the fact that under the Workmen's Compensation Law of this State the disease to be compensable must follow not merely accident but injury as well. The word "accident" and the word "injury" are not synonymous. Accidents occur without injury, and injuries occur without accident. The critical question in this examination is whether or not a disease is ever an injury, not whether a disease is ever an accident or accidentally caused. Moreover we are not in the least advanced towards a working rule concerning the classification of diseases as accidental injuries or otherwise by making the criterion the presence or absence of an accident. If it can ever be said that there is involved an accident, or an occurrence in the sudden invasion of the human body by bacteria, then in substantially all infectious diseases there is a precedent accident, and, therefore, an accidental injury. It was said in *Marshall* v. *East Holywell Coal Co., Ltd.* (7 W. C. C. 19): "The accident must be something which is capable of being assigned to a particular date, and which is in the popular and ordinary sense an accident." There is always a definite point of time, and in this sense an occurrence, whenever bacteria invade the body, and the suggestion that the result of the invasion is disease or injury accordingly as you know or do not know the precise moment when the invasion takes place does not recommend itself. In *Brintons, Ltd.,* v. *Turvey (supra)* Robertson, L. J., in a dissenting opinion remarked, concerning the statement of the County Court judge relating to the contraction of anthrax, that it was due to the "accidental alighting of a bacillus from the nfected wool on" the man's eye, as follows: "But, while

scientifically accurate, this vivid presentment as of a concrete, although occult, incident must not blind us to the fact that any other case of disease falling within the wide scope of bacteriology might with equal accuracy be traced to the occurrence of a similar accident."

I am aware of the fact that in *Brintons, Ltd.,* v. *Turvey* (*supra*) the disease of anthrax was classed as an accidental injury, though it arose without previous abrasion of the skin or other traumatic injury. In that case the lord chancellor who wrote one of the prevailing opinions seemed to find himself in this difficulty over the phrase " accident causing injury " which was under consideration, namely, that unless " disease " was to be included within the word " injury " there could be no recovery for the results of disease, even though the disease itself followed accidental injury. Thus he says: " It does not appear to me that by calling the consequences of an accidental injury a disease one alters the nature or the consequential results of the injury that has been inflicted. Many illustrations of what I am insisting on might be given. A workman in the course of his employment spills some corrosive acid on his hands. The injury caused thereby sets up erysipelas — a definite disease. Some trifling injury by a needle sets up tetanus. Are these not within the Act because the immediate injury is not perceptible until it shows itself in some morbid change in the structure of the human body, which, when shown, we call a disease? " In the corrosive acid case, an extraneous poison touched the hands, and there was traumatic injury antecedent to disease just as clearly as if the hands had been burned by fire. In the tetanus case the pricking of a needle is assumed and there is traumatic injury succeeded by disease. It may be said of the opinion of the lord chancellor that had he been dealing with the Workmen's Compensation Law of the State of New York he would not have been troubled with the thought that if a contrary holding was made diseases which were the consequences of traumatic injuries would not be compensable, for our law provides for all such cases when it defines " injury " and " personal injury " to be " accidental injuries," and " such disease or infection as may naturally and unavoidably result therefrom." Decisions of other jurisdictions which have to

do with the interpretation of statutes worded otherwise than the Workmen's Compensation Law of the State of New York are valueless as commentaries upon the law now under consideration.

We have seen that all the arguments advanced in reported cases to classify a particular disease under consideration as an accidental injury logically result in placing all diseases in the " injury " class. Nor can any argument be made by which one group of diseases may be distinguished for purposes of compensation from any other group. It is frequently suggested that conditions resulting from the nature of an employment, such as lead or arsenical poisoning, may be regarded as belonging to a separate class of occupational diseases, which should be denied compensation. If a so-called occupational disease were a true disease, arising without accidental injury, it would seem somewhat extraordinary that it should be made non-compensable, while other diseases having a more remote relationship to an employment should be held to be the proper subjects of an award. The truth of the matter is that in such instances there is initial injury through the absorption into the system of lead and arsenic, which gradually bring about sickness or perhaps disease. There is, however, no injury which is accidental, for it is inflicted through a period of months or years, and if disease results it nevertheless does not follow " accidental injuries." It is entirely plain that we must accept all diseases as compensable without precedent injury, or reject all such diseases, for there is open no middle course. Our Workmen's Compensation Law decides the matter, for by expressly including diseases which " result " from " accidental injuries " within the definition which it gives of compensable injuries, it excludes therefrom by clear implication all diseases otherwise arising.

The particular disease under consideration is glanders, which was contracted without precedent accidental injury. Glanders is a true disease resulting from toxins produced within the body by bacterial action. This is a necessary conclusion from the facts recited in a transcript from the records of the hospital where the deceased was confined. After giving glanders as the cause of death the transcript makes the statement, " November 2, 1917, Glanders bacilli

found in pustules and subcutaneous abscess." Glanders is defined in the Encyclopedia Britannica as follows: " Glanders or farcy, a specific, infective and contagious disease, caused by a tissue parasite (Bacillus mallei) to which certain animals, chiefly the horse, ass and mule, are liable, and which is communicable from them to man." Glanders cannot be differentiated from other diseases by the fact that ordinarily it is a disease which affects a horse rather than a human being, for it cannot matter whence the bacteria have proceeded which set up disease within the human body. Anthrax is a disease which commonly affects sheep and cattle, and is communicable from them to man, yet of the effects of anthrax it was said in *Bacon v. U. S. M. A. Assn. (supra)*: " the difference between the cause of this condition and the causes of typhoid fever, tuberculosis, small-pox, scarlet fever and such like diseases, is that this particular condition is caused by different bacilli from the others, and they come in contact with the skin or enter into its pores, while in the other cases they are generally breathed in." Except that the bacilli differ, glanders does not differ from the diseases named in the quotation. We think that for legal purposes glanders is a disease which when contracted without previous accidental injury occurring in the course of employment cannot be classed under the Workmen's Compensation Law of this State as an accidental injury arising out of and in the course of employment. We, therefore, conclude that the question should be answered in the negative, the award reversed and the claim dismissed.

The question is answered in the negative, the award reversed and the claim dismissed.

All concurred, except JOHN M. KELLOGG, P. J., dissenting with an opinion in which COCHRANE, J., concurred.

JOHN M. KELLOGG, P. J. (dissenting):

Glanders or farcy is a horse disease. It rarely afflicts man, but, when it does, is usually caused by germs from the secretions of the nose of the diseased horse inoculating him through an abrasion of the skin or mucuous membrane, usually of the nose. It is said, however, that experiments

have demonstrated the possibility of inoculation through sound skin or sound mucous membrane. The presence of the disease in man, therefore, indicates that, with more or less force, infectious germs have been carried from the diseased horse to the man and inoculated him through an abrasion of the skin or a break in the mucous membrane.

The employer had in his stables a glandered horse, which was to be taken to the dock to be killed. The horse was kept in the basement, away from the other horses, and the decedent had nothing to do with it, and was not near it until, at the request of the employer, he lead it in the evening to the dock. It does not appear that any other horse in the stable had the disease, or that the employee had been otherwise exposed. The morning following, the decedent was sick, showing the symptoms of glanders, and he died from that disease in about two weeks. The Commission found no abrasion of the skin, and, therefore, concluded that the inoculation came through inhalation. It is, therefore, reasonably certain that the germs of glanders, emitted from the nostrils of the horse, entered the nostrils of the employee at a break in the mucous membrane, with the result that he died of glanders in about two weeks.

It seems clear that the employee's death resulted from an accidental injury within the meaning of the Workmen's Compensation Law. " Unexpected consequences have resulted from an act which seemed trivial and innocent in the doing. Of itself, the scratch or the puncture was harmless. Unexpectedly it drove destructive germs beneath the skin, and thereby became lethal. To the scientist who traces the origin of disease, there may seem to be no accident in all this. ' Probably it is true to say that in the strictest sense and dealing with the region of physical nature, there is no such thing as an accident.' (HALSBURY, L. C., in Brintons, Ltd. v. Turvey, L. R. 1905, A. C. 230, 233). But our point of view in fixing the meaning of this contract, must not be that of the scientist. It must be that of the average man (Brintons, Ltd. v. Turvey, supra; Ismay, Imrie & Co. v. Williamson, L. R. 1908 A. C. 437, 440). Such a man would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for

mishap, and so an accident. This test — the one that is applied in the common speech of men — is also the test to be applied by courts." (*Lewis* v. *Ocean Accident & G. Corp.*, 224 N. Y. 18, 20, 21.) That case arose under an accident policy insuring against "loss or disability, resulting directly, independently, and exclusively of all other causes, from bodily injuries effected solely through accidental means." Death was due to inflammation of the brain produced by the germ known as the "staphylococcus aureus," which came from an infected perforated pimple upon the lip. The court considered the death accidental.

"'The word 'accident' is susceptible of and has received many definitions, varying with the connection in which it is used * * *. As used in an indemnity policy, such as this, we are of the opinion that the word 'accident' means an undesigned and unforeseen occurrence of an afflictive or unfortunate character, resulting in bodily injury to a person other than the insured.'" (*Melcher* v. *Ocean Accident & Guarantee Corp.*, 226 N. Y. 51, 56.) The words "accident," "injury" and "disease" are very flexible in meaning, and are to be construed according to the true intent and spirit of the statute or contract in which they are found with reference to the particular circumstances under consideration.

An employer negligently allowed the supply of drinking water to be contaminated with typhoid fever germs, and, from drinking the water, an employee contracted typhoid fever, which proved fatal. It was held that the death was due to accident within the Workmen's Compensation Law. (*Vennen* v. *New Dells Lumber Co.*, 161 Wis. 370; 154 N. W. Rep. 640; *Ætna Life Ins. Co.* v. *Portland Gas & Coke Co.*, 229 Fed. Rep. 552.)

A hostler contracted glanders from a diseased horse and died of that disease, and the Supreme Court of Massachusetts (*Hood & Sons* v. *Maryland Casualty Co.*, 206 Mass. 223; 92 N. E. Rep. 329) held it was an accidental death, the court saying: "It is plain that Barry suffered bodily injury in consequence of becoming infected with glanders; as much so as if he had had a leg or an arm broken by a kick from a vicious horse. * * * It was in the nature of an accident that he was set to work upon or cleaning up after horses that had

glanders, and it was in the nature of an accident that he became infected with the disease."

In *Hiers* v. *Hull & Co.* (178 App. Div. 350) an employee contracted the disease of anthrax while handling hides and we held it an accidental injury within the Workmen's Compensation Law. In that case, it is true, the germs entered a abrasion of the skin; in this case they evidently entered a break in the membrane of the nose. Mr. Justice COCHRANE, in his opinion in that case, explains *Bacon* v. *U. S. M. A. Assn.* (123 N. Y. 304).

Anthrax, caused by a germ, settled on the eye of a wool sorter, without any apparent physical injury, is an accidental injury. (*Brintons, Ltd.,* v. *Turvey, supra.*)

Sunstrokes and heat strokes have been held to be accidental injuries where apparently there was no physical injury. (*Hernon* v. *Holahan,* 182 App. Div. 126; *Campbell* v. *Clausen-Flanagan Brewery,* 183 id. 499; Bradbury's Workmen's Compensation Law [3d ed.], 443, 383; *Ismay, Imrie & Co.* v. *Williamson,* 99 L. T. 595; 1 B. W. C. C. 232.)

It is not strictly accurate to say that anthrax, glanders and like diseases are only compensable when they follow an independent traumatism arising in the course of the employment. If the decedent had been inoculated through a pre-existing abrasion upon his hand, there would seem to be little difficulty in saying that the death came from an accidental injury. It is immaterial when or how the abrasion in the skin or the break in the mucous membrane occurred; the important fact is the accidental infection, the real producing cause of the death.

The germs did not knock the employee down or break his jaw, but concededly they caused his death. The death occurring from a risk of the employment, it is better to rest upon the ordinary presumption in favor of the claim than to resort to fine spun theories to destroy it. The decedent knew that the horse had glanders, and that it was being killed to prevent the spread of that disease, and he evidently exercised due care to avoid infection and to be at all times a safe distance from the horse. We are not required to assume that the mere breathing of the horse and the man carried the germs and caused the inoculation. It is more probable that a sneeze or

cough, or a sudden toss of the head of the horse, caused the infectious matter to go some distance, and that such unexpected act brought about the inoculation. In any event, by pure accident, the germs passed, with more or less force, from the horse to the man. It is unnecessary to inquire whether the death was caused by the particular germs which actually made the passage; they were the proximate cause of the death, and in the cases above cited, of the typhoid germs, the glanders germs and the anthrax germs, that matter was not deemed important. The germs which entered the body were treated as the cause of the trouble which resulted from them.

Frequently the time, the place and circumstances are important factors in determining whether an infection or injury is the result of accident. If the infection takes place at a definite known time, from a definite known cause connected with the employment, it may, within the liberal spirit of the law, be considered an accidental injury, while, in the absence of such conditions, the disability might be attributable to general causes or treated as arising from a vocational disease, or otherwise.

*Matter of Horrigan* v. *Post-Standard Co.* (224 N. Y. 620) is on all fours with this case.

Another question, not raised in the briefs, is present in the case. It is currently assumed, I think erroneously, that the Workmen's Compensation Law applies only where an accident is shown. The amendment to the Constitution upon which the Workmen's Compensation Law rests does not limit compensation to cases of accident. It is evident that the Legislature may award compensation for any injury resulting from the employment. Subdivision 7 of section 3 of the Workmen's Compensation Law defines injury and personal injury: " ' Injury ' and ' personal injury ' mean only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom." The word " therefrom " at the end of the sentence logically and grammatically refers back to the word " employment," and not to the words " accidental injuries." Is that the legislative meaning, or was the section intended to limit the words " injury " and " personal injury " to " accidental injuries? " In my opinion a disease or infection naturally

and unavoidably resulting from the employment is compensable under the statute. Each word in the section should have a meaning, and unless I am right in the construction the provision as to diseases and infection is without meaning. If an accidental injury naturally and unavoidably results in disease or infection, the disease or infection would at common law be considered as part of the damages resulting from the accident. The closing words of the subdivision, therefore, were not necessary to cover such a case, and if no other cases were intended to be covered the language is clearly superfluous. The Legislature appreciates the value of words, and presumably does not waste them, and it is proper construction to give force, so far as may be, to all of the words in the statute. These words cannot be given force without the result that diseases and infections naturally and unavoidably resulting from the employment are within the statute. I assume that the word " unavoidably " does not mean that the disease or infection must necessarily follow to every person engaged in the employment, but fairly means that the disease or infection naturally results from the employment and from no other source, and that the injured party did not outside of the employment bring the disease or infection upon himself, but the unavoidable conclusion is that it came from the employment and not otherwise.

If we are wrong in concluding that there was an accidental injury, nevertheless the award may stand.

I favor affirmance.

COCHRANE, J., concurred.

Award reversed and claim dismissed; certified question answered in the negative.