Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of JOSEPH F. BRADY, Respondent, for Compensation under the Workmen's Compensation Law, *v.* HOLBROOK, CABOT & ROLLINS CORPORATION, Employer and Self-Insurer, Appellant.

Third Department, November 12, 1919.

Workmen's Compensation Law — right to award for loss of leg where amputation following simple fracture was made necessary solely because of diseased condition of bone.

A claimant is not entitled to an award under the Workmen's Compensation Law for the loss of a leg which was amputated at about the middle of the thigh, where it appears that the claimant in falling suffered a simple

fracture of the leg, and that the amputation, which was made several inches above the fracture, was solely for the purpose of curing a diseased condition of the bone which existed prior to and was doubtless the underlying cause of the fracture.

*It seems,* that an award might have been made for the accident.

LYON, J., dissented.

APPEAL by the defendant, Holbrook, Cabot & Rollins Corporation, from a decision and award of the State Industrial Commission, made on the 11th day of April, 1919, and also from a decision and award made on the 17th day of April, 1918.

*Adolph Hansen,* for the appellant.

*Charles D. Newton,* Attorney-General [*E. C. Aiken, Deputy Attorney-General,* of counsel], and *Bernard L. Shientag,* counsel for the State Industrial Commission, for the respondents.

WOODWARD, J.:

The State Industrial Commission has found as facts that on the 28th of January, 1919, the claimant was employed by the defendant company in the construction of a subway in New York city, and that while walking along a track outside of the subway, where he had a right to be in the course of his employment, the passageway was " suddenly plunged into darkness and as the claimant was feeling his way, he stumbled and fell down to the bottom of a concrete floor decline. As a result of said accident the claimant sustained a fracture of the right femur, which necessitated the amputation of his right leg at about the middle of the thigh."

There is no evidence in the record of this passageway having been previously lighted and " suddenly plunged into darkness " nor that the claimant " stumbled and fell down to the bottom of a concrete floor decline," nor yet that the " fracture of the right femur " was such as to " necessitate the amputation of his right leg." Aside from this, the finding seems to be sustained by some evidence.

The claimant testified: " I was walking along in perfect darkness where it had been light a short time before, and when I came to this incline I stepped into space and fell down the incline." This incline was shown to be at an angle of about thirty degrees and to be about nine or ten feet in length. What occurred was that the claimant, walking along this dark

passageway, miscalculated his distance, stepped forward and upon the upper end of the incline, and fell forward because of the comparatively abrupt ·decline. But whatever may have been the details of the fall, there is no question that the claimant fell, and there is no doubt that the right femur was broken at the extreme lower end, but the conclusion that this comparatively simple fracture " necessitated the amputation of his right leg at about the middle of the thigh," some inches above the fracture, is not sustained by the evidence, and this is the material question in the case.

The evidence is wholly undisputed that the claimant had a " pathological fracture." This is his own admission. Upon his being taken to the Roosevelt Hospital it was found that he had an osteosarcoma, popularly known as cancer of the bone, at the point of the fracture, and there is no dispute in the evidence that the amputation was made, not because of the fracture, but because of the disease. Dr. Gillespie testified, and there was no contradiction, that there was no visible injury to the outside of the leg that he could find, and that " the leg was amputated because the growth was malignant; " that· if the accident had occurred, as described, and there had been no sarcoma at that point, no amputation would have been necessary. The diagnosis was made immediately after the accident, and the operation took place within eight days of the diagnosis, and the undisputed evidence is to the effect that the operation was for the purpose of curing the diseased condition of the leg, not because of the fracture. Indeed, the fair inference from the evidence is that the fracture was the result of the disease rather than of the accident, though it was inferentially admitted that the false step hastened the break. But the loss of the leg was clearly due to the diseased condition; that disease was the only justification for the amputation, and the disease concededly existed before the accident, and was, doubtless, the underlying cause of the fracture, for it is hardly conceivable that such a fall as the claimant describes could have resulted in a breaking of a thigh bone at its lower extremity. It is not shown that the claimant was bruised in any way; he apparently fell forward down an incline of about thirty degrees and rolled to the bottom, with no other injury than the breaking of the diseased

bone, and to charge this disease to the industry, simply because it became manifest by reason of this inconsequential fall, is an abuse of the purpose of the Workmen's Compensation Law which sought to insure against the inherent risks of certain classes of industry. The very recent discussion in *Richardson* v. *Greenberg* (188 App. Div. 248) makes it unnecessary to go into the question of the distinction between an accident and disease, and it seems to us that while the Commission might have made an award for the accident, it was not justified in going to the extent of charging the employer with the loss of a leg, when all of the evidence shows that the amputation was made necessary not by the accident but by the disease, without which the accident, in all probability, would have resulted in nothing more serious than a wrenching of the body.

The award should be reversed and proceedings remitted to the Industrial Commission for disposition in accordance with this opinion.

All concurred, except LYON, J., dissenting.

Award reversed and matter remitted to the State Industrial Commission for disposition in accordance with the opinion.