Before State Industrial Commission, Respondent.

In the Matter of the Claim of Hila Dobson Jeffreyes, Respondent, for Compensation under the Workmen's Compensation Law, *v.* Charles H. Sager Company, Employer, and the Travelers Insurance Company, Insurance Carrier, Appellants.

Third Department, November 16, 1921.

**Workmen's Compensation Law — accidental injury — claimant injured through gradual action of poisonous chemical solution which came in contact with her hand in development of photographic plates — no accidental injury where contact with solution was voluntary and intentional — injuries resulted from no occurrence referable to any particular moment of time — " accident " defined.**

There was no accidental injury for which an award could properly be granted under the Workmen's Compensation Law where it appeared that the claimant, who was employed in developing photographic plates, placed her hand in the developing solution in the course of her work for more than a week, and that as a result of the gradual action of the poisonous solution the blood vessels in her little finger became contracted, gangrene set in and it was necessary to amputate the finger, for the contact made between her hand and the solution was voluntary and intentional and the injuries resulted from no occurrence which is referable to any particular moment of time which is definitive.

The word " accident " denotes an event which occurs upon the instant rather than something which continues, progresses or develops.

John M. Kellogg, P. J., and Kiley, J., dissent, with opinion.

Appeal by the defendants, Charles H. Sager Company and another, from an award of the State Industrial Commission, entered in the office of said Commission on the 24th day of January, 1921.

*Benjamin C. Loder* [*William B. Davis* of counsel], for the appellants.

*Charles D. Newton*, Attorney-General [*E. C. Aiken*, Deputy Attorney-General, of counsel], for the respondents.

H. T. Kellogg, J.:

The claimant was employed by a photographer in the development of photographic plates. It was necessary for

her, more than 500 times each day, to dip plates, held in her left hand, into a poisonous chemical solution. Having performed this work continuously for more than a week her fingers became red and swollen. She then went to a physician who gave her treatment. Eventually the end of the little finger of her left hand became mummified, gangrene set in, and an amputation thereof becoming necessary, was performed. The pathological cause of her injuries was the contraction of the blood vessels of her finger through the gradual action of the chemical solution. In my opinion there was no accident involved for two reasons: *First,* the contact made by claimant between her hand and the solution was voluntary and intentional. In *Matter of Woodruff* v. *Howes Construction Co.* (228 N. Y. 276) the claimant developed a frog felon on the palm of his right hand as the result of the continuous pounding of his hand upon the head of a screwdriver. An award was reversed for reasons of which the following was one: " This testimony was insufficient to show that the injury was caused by accident. An accidental event takes place without one's foresight or expectation; an event that proceeds from an unknown cause, or is an unusual effect of the known cause, and therefore not expected." In our case the one event, namely, the coming into contact of the hand and the solution, was expected, and, therefore, not accidental. *Secondly,* the injuries resulted from no occurrence which is referrable to any particular moment of time which is definite. The word " accident " is derived from the Latin verb *accidere,* signifying " fall upon, befall, happen, chance " (Century Dictionary), and denotes an event which occurs upon the instant rather than something which continues, progresses or develops. In *Marshall* v. *East Holywell Coal Co., Ltd.* (7 W. C. C. 19) it was held that a " beat hand " or " beat knee," a miner's injury, caused by the gradual process of continual friction, was not an accident. COLLINS, M. R., said that " the accident must be something which is capable of being assigned to a particular date." MATHEWS, L. J., said: " It seems to me that it would be as reasonable to call the occurrence an accident as to say that it was an accident when a man ceased to be able to work because he was worn out by long hard work." In *Steel* v. *Cammell, Laird & Co., Ltd.* (7 W. C. C. 9) it was held that lead

poisoning, being due to a gradual process, could not be accidental in its origin. One of the reasons assigned by the court for its decision was the fact that the statute (60 & 61 Vict. chap. 37, § 2) required a notice of an accident to be given within a stated period after it occurred, and that from this it was to be inferred that the accident contemplated must be one having a definite moment of origin. The same conclusion can be drawn from our statute requiring a notice of an accident to be given within thirty days thereafter. It seems to me, therefore, that as the injuries in this case arose from the application of a poisonous solution during the working hours of claimant for a period of more than seven days, and as the application was voluntarily made, she received no accidental injury for which an award could properly be granted.

The award should be reversed and the claim dismissed.

COCHRANE and VAN KIRK, JJ., concur; JOHN M. KELLOGG, P. J., dissents with an opinion in which KILEY, J., concurs.

JOHN M. KELLOGG, P. J. (dissenting):

The claimant sustained serious injuries which arose out of and in the course of the employment. The only question here is, were the injuries accidental within the meaning of the Workmen's Compensation Law. The employer, who conducted a drugstore, in connection therewith was developing and manufacturing films. The claimant had been employed for about a week before September 30, 1919, in developing the films in a solution which contained dangerous chemicals. It was necessary for her to dip the fingers of the left hand in the solution. She developed from 500 to 800 films per day, many of which required the insertion of the fingers in the liquid several times. Before September thirtieth she noticed that her fingers were tender, and as she was leaving for lunch on that day, about eleven-thirty A. M., while drying her hands, she " noticed the flesh was broken through, * * * sort of a rash," and that her fingers were tender, a red streak around the nails, and that the nails were discolored. She did not know that there was any abrasion or scratch upon her hand before that time. She stopped work, but white spots developed upon the fingers and broke, leaving scars, and the trouble

progressed, with the result that her finger was amputated and she suffered and will suffer other serious consequences from the poisoning. She had not been informed and did not know that the solution was poisonous. The metol solution for developing films is a German preparation; sometimes it causes poisoning of the hand. The photographer who was sworn upon the subject swears that in his experience of eighteen years he has known of two persons who were poisoned and of others who were affected about as the claimant was on September thirtieth, and had to quit work and had no further trouble. Many people can use the solution without any inconvenience. In some cases it may cause inflammation of the fingers around the nails, making them very tender, and soon the skin would come off as though something rubbed it and poisoning may result. " Elon " is the trade name of a substitute American solution, which uses paramidophenol-hydro-chloride in place of metol. It is less refined than the metol and is much stronger. The solution which the claimant was using was found to be six times stronger than indicated by the formula upon the bottle. The attending physician says that the claimant was poisoned by the solution and that he treated another person who was poisoned in the same way. In using the solution, if a person is affected by it, the skin is irritated, the blood vessels contracted; the contraction of the blood vessels is the most serious part of it. The solution is more penetrating down to the blood vessels than poison ivy is. In poison ivy the skin itself is inflamed, but it does not go through the skin. Metol poisons more gradually, but is practically the same. It may develop in two or three days, while poison ivy would not develop until after twenty-four hours. The metol is much more penetrating. The most common germicide in use is bi-chloride of mercury; it takes the skin off. It is not being used now by surgeons because of its effect upon them and the patients. The solution used here was stronger than the ordinary germicide. Before September thirtieth claimant had suffered no inconvenience from her fingers and there was nothing noticeable in their condition.

The Commission has found that by the immersion of the

fingers in the solution the dangerous chemicals entered the pores of the skin of the fingers and penetrated the tissues and flesh underneath, and because of the peculiar poisonous action of the dangerous chemicals the blood vessels of the fingers were contracted, particularly the blood vessels of the little finger of the left hand, and as the result the injuries for which compensation was granted resulted.

Concededly the claimant and her employer did not anticipate that she was liable to suffer any damage or inconvenience on account of the use of the solution, and the first injury from it was apparent at eleven-thirty on September thirtieth. The result, coming from such an unexpected source and in the manner in which it did, was an accident. " An accident is an event which takes place without one's foresight or expectation; an event that proceeds from an unknown cause or is an unusual effect of the known cause, and, therefore, not expected." (*Matter of Woodruff* v. *Howes Construction Co.*, 228 N. Y. 276.) In that case the employee, who had a frog felon in the palm of his hand resulting from the continued use of a screwdriver, was denied compensation because there was no evidence that the felon resulted in the manner in which he thought it did. It did not appear that the use of the screwdriver was the cause of the injury. The case leaves us to assume that if it had so appeared compensation would have been sustained.

" ' Probably it is true to say that in the strictest sense and dealing with the region of physical nature, there is no such thing as an accident ' [citing authority]. But our point of view in fixing the meaning of this contract, must not be that of the scientist. It must be that of the average man [citing authorities]. Such a man would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident. This test — the one that is applied in the common speech of men — is also the test to be applied by courts." (*Lewis* v. *Ocean Accident & G. Corp.*, 224 N. Y. 18, 21.)

In *Matter of Gray* v. *Semet-Solvay Co.* (231 N. Y. 518) the claimant's husband was a patrolman of the defendant's plant where chemical preparations were manufactured. Chemical

odors and fumes were constantly emitted from it. He complained of illness July 15, 1918, and died in September, 1918. The medical evidence indicated that the cause of death was mineral poisoning or serous miningitis from the toxemia due to the poisonous fumes where he worked. The award was sustained, as death resulted from an accidental injury. We must assume that the case is properly reported and that the decision was placed upon the facts stated. ·

In *Pursell* v. *Levor & Co., Inc.* (193 App. Div. 920) an employee was bleeding skins for a tanner. Some of the dye got on his hands and, in rubbing perspiration from his forehead, the dye entered a fissure or scratch in his skin. Compensation was sustained.

In *Keenan* v. *Roosen Co.* (187 App. Div. 962) fumes from a tank over which the employee was working aggravated the pneumonia which he had and death followed and death benefit was sustained.

In *Kelley* v. *States Metals Co.* (184 App. Div. 918) while cleaning one of the tanks in the factory the employee was overcome by the fumes and, as a result, died of degenerative changes in his kidneys and liver and death benefit followed.

In *Matter of Plass* v. *Central New England R. Co.* (169 App. Div. 826) it was held that a poisoning by poison ivy was within the act. (*S. C.*, 221 N. Y. 472; 226 id. 449.)

In *Hart* v. *Wilson & Co., Inc.* (227 N. Y. 554) a wool puller suffered from eczema of the hands and the tetanus germ entered the system through the cracks in the skin causing death and death benefits followed.

In *O'Dell* v. *Adirondack Electric Power Co.* (223 N. Y. 686) the employee, while stringing wires in an ash cellar under the boiler room, became ill from coal gas on August 5, 1916, and November 6, 1916, he died from pulmonary tuberculosis. The evidence indicated that the gas poisoning was the cause of the disease which caused his death and compensation was awarded for an accidental death.

In *Eldridge* v. *Endicott, Johnson & Co.* (189 App. Div. 53) we held, by a divided court, that an employee who had a slight cut on the neck from a razor, and became afflicted with anthrax on the following day while unloading hides and died of anthrax, had suffered an accidental injury.

In *Richardson* v. *Greenberg* (188 App. Div. 248) the employee was leading a horse afflicted with glanders and he contracted the disease and died from the effects of it. By a divided court we held there was no accident and the prevailing and dissenting opinions say much which may be of interest here. In this court it was assumed that the glanders germ entered the system of the employee while he was leading the horse, and the question upon which the disagreement arose was whether there was an accidental injury. The practical difference between the *Eldridge* and the *Greenberg* cases before our court was, in the former the germ entered through a cut in the skin, in the latter it was inhaled; the former was held accidental, the latter not. The Court of Appeals (228 N. Y. 21) reversed the *Eldridge* case upon the ground that there was no evidence that the anthrax germ passed from the hides the employee was handling into his person; that the court could not take judicial notice of the nature of the skins, whether susceptible to anthrax, or to the method or likelihood of inoculation by the employee. The court did not pass upon the question whether if the germ which caused his inoculation came from the hides it would be an accident, but in view of the cases we have referred to it seems that that question has been settled and that the *Greenberg* case does not stand in the way of compensation here. The evidence shows that the poisoning here is similar in its nature and effect to that of poison ivy, and, as we have seen, such poisoning is accidental.

Chapter 538 of the Laws of 1920 added article 2-A to the Workmen's Compensation Law. The history of the article, and of the cases covering the injuries therein referred to, makes it quite clear that the article was added to the law to remove certain doubts which the interpretation by the courts of the Workmen's Compensation Law, as it theretofore existed, had created in certain cases, and may be considered as a legislative interpretation of the former law. Section 49b of the article reserves the right of employees with respect to diseases which otherwise might be construed as accidental injuries. The spirit of the amendment fairly invites the present award. It is a mistake to consider that the claimant is suffering from an occupational disease; her injuries come from poisoning inflicted upon her in the course of and which

arose out of her employment. The award, when applied to the evidence, justifies and compels the conclusion that at first the poisonous liquid caused the fingers to become tender by wearing away of the outer skin, thereby permitting the poison thereafter to enter the system through the skin, as so worn away, and the accident was the unexpected entry through the skin of the poison at places where the occupation had destroyed the protection which the outer skin otherwise would have afforded the claimant.

I favor an affirmance.

KILEY, J., concurs.

Award reversed and claim dismissed.