GEORGE A. FULLER COMPANY *et al. vs.* WILLIAM SCHACKE.

DECEMBER 7, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is a workmen's compensation case in which the employers filed a petition for the determination of their rights in the circumstances, and the employee filed a cross petition praying for an award of compensation. However, for convenience, we shall hereinafter refer to the employee as the petitioner and to the employers as the respondents. From a decree of the superior court awarding the petitioner compensation, respondents have appealed to this court. Such appeal raises solely a question of law, namely, is there any evidence to support the finding of the superior court that petitioner received a personal injury *by accident* arising out of and in the course of his employment.

The facts are undisputed. Petitioner, an iron worker, worked as a foreman rigger for respondents in Iceland. For about eight or ten weeks in October and November, 1941, he supervised the unloading of cargo from ship to shore. There being no docks or wharves at the point of unloading, lighters were used to unload the ship and take the cargo to trucks on the beach. The manual work of unloading was done by native laborers, but, as they lacked experience in handling the unloading equipment, petitioner was in the water more or less constantly assisting and instructing them. Sometime about Thanksgiving Day 1941 that work was completed. Thereafter petitioner continued working out of doors erecting buildings and distributing supplies to the construction camp. One day, about the middle of December, 1941, the date being not otherwise fixed, he suffered a sharp pain in his leg and hip. Although experiencing pain almost daily, he continued at his work until February 7, 1942. On that day he was excused from work on respondents' doctor's certificate. The doctor diagnosed petitioner's condition as sciatica and recommended that he be sent home to the United States for medical treatment. Petitioner left Iceland on March 27, 1942.

The petitioner contends that the severe Icelandic weather to which he had been continuously exposed brought on an acute attack of sciatica one day about the middle of December, 1941, and that this condition was a personal injury which he received by accident. He worked out of doors for twenty-four weeks in all kinds of weather; high winds, snow, rain and sleet. He was drenched almost every day and he claimed that the clothing supplied by the respondents furnished inadequate protection against such weather. He testified that although it was the custom for iron workers in the United States not to work in the rain because of the danger of accidents, he was required to work in the rain and in all kinds of weather. Sometimes he worked continuously for eighteen to twenty hours a day.

When he arrived home in March 1942 he was treated by his family doctor. This doctor testified at the hearing in the superior court. In answer to a hypothetical question, based substantially on the facts set out in the last two preceding paragraphs, he testified that the petitioner suffered an acute attack of sciatica which was caused by exposure. He also testified that by "acute" was meant a sudden onset of the attack and that the weather "is a factor in sciatica".

There is no claim that petitioner was subjected to any unusual or sudden hazards of weather different from his fellow workmen. Nor is there any claim that he suffered a blow, a strain, or a fall, or that any other untoward happening or event befell him in the course of his employment. Moreover, petitioner does not claim that he was called upon to do any unusual work to which he could attribute his condition. Except for his continuous exposure to the weather in common with all his fellow workmen there is nothing in the record to which his sciatica can reasonably be attributed. Such being the case, the question posed for our determination may be stated as follows: Does a workman who suffers an acute attack of sciatica merely from continued exposure to severe weather, while doing his regular work out of doors in such weather, receive a personal injury *by accident* arising out of and in the course of his employment within the meaning of our workmen's compensation act? We think not.

Because we differ from the trial justice in this matter and because he has squarely placed his decision on the ground that the case at bar is not distinguishable from and is, therefore, ruled by *Gibbons* v. *United Electric Rys. Co.*, 48 R. I. 353, we deem it desirable to discuss more fully than we otherwise would the view which this court has heretofore taken of the scope of the words "by accident" in our statute. Our purpose will be to point out how far we may reasonably go in giving a liberal construction to those words in favor of the injured workman consistently with our precedents. And we shall seek to show, by summarizing some illustrative

cases, how far we have actually gone along with the current of authority.

Workmen's compensation acts, both English and American, have been prolific of nice questions of law. But perhaps no provision of those acts has been provocative of more difficulty than that which provides for compensation for personal injury only if received "by accident." In some of our states those troublesome words are not in the statute. Their courts have consequently been saved much vexation. This court, however, has had to struggle with the problem almost from the beginning. *Carroll* v. *What Cheer Stables Co.*, 38 R. I. 421. Shortly thereafter it adopted the liberal view of the House of Lords, expressed in *Fenton* v. *Thorley & Co.*, 1903 App. Cas. 443, that the word "accident" is used in the act in the popular and ordinary sense of that word as denoting an unlooked-for mishap or an untoward event which is not expected or designed. *Walsh* v. *River Spinning Co.*, 41 R. I. 490. It was not long before that view was expanded to include a sudden breaking down of the power of the heat of the workman's body to resist excessive cold and exposure under conditions to which he was especially subjected by the unusual nature of his employment at that time and to which all others were not equally subjected. *Gibbons* v. *United Electric Rys. Co., supra.*

With that case and the *Walsh* case as a foundation, this court has consistently adhered to a policy of liberality in applying that construction of the word "accident" to a variety of cases. *Chirico* v. *Kappler*, 61 R. I. 128; *Mederos* v. *McLeod*, 65 R. I. 177; *Barker* v. *Narragansett Racing Ass'n, Inc.*, 65 R. I. 489; *St. Goddard* v. *Potter & Johnson*, 69 R. I. 90. We endeavored in those cases to point out the facts upon which an "accident", within the meaning of the act, was properly predicated. But we have nevertheless declined to expand such liberality further, because to do so would, in effect, amount to the elimination of the words "by accident" from our statute, so that it would then differ little, if any, from the statutes in those states where compensation

·is allowed for personal injury merely, provided it arises out of and in the course of the employment. *Fossum* v. *Fuller Co.,* 70 R. I. 191. We conceive it our duty to give meaning to the words of the statute and to leave to the legislature further liberalization which is beyond the reasonable limits ·of judicial construction.

However, in the instant case petitioner contends that it is reasonable, in the circumstances of this case, to construe the word "accident" to include an acute attack of sciatica. Moreover, he urges that such a construction cannot be avoided without overruling the *Gibbons* case. These contentions are unsound. It is true that in the instant case, as in the *Gibbons* case, the primary cause of the injury is exposure to the weather while working out of doors, but there the similarity substantially ends.

In the *Gibbons* case the exposure was of a definite time and place ending immediately in the injury, namely, frostbite. Gibbons worked twenty-four hours continuously in the wet snow and the severe cold. This was an unusual condition of his employment which caused the injury, that is, the breaking down of the power of the heat of his body to resist the cold. While it is not easy to express in words, it is not difficult to understand that there was in the *Gibbons* case an element of suddenness in the injury which was so closely connected with the unusual conditions of weather and employment that produced it as to be considered an accident in the popular sense of the word.

In the instant case definiteness of ·time and place with reference to unusual conditions of employment and weather and connected immediately with the injury is lacking. It was not the severe weather on any particular day which brought on petitioner's sciatica. Indeed, the particular day is not identified. Nor is there any evidence of unusual severity of the weather or of unusual nature of the employment at the time when he first felt the pain. On the contrary, the evidence is that every day was cold, and almost every day was wet. Those were the regular and usual conditions

of his employment throughout his stay in Iceland. Such weather was a normal incident of outdoor employment there. And it is fair to say that it was not unlooked-for or unexpected. The only reasonable conclusion to draw from such evidence is that petitioner's sciatica was the result of exposure to such weather in its totality and not on any particular day. In other words, he contracted sciatica by a gradual process in the natural course of his usual work from constant exposure to the generally prevailing severe weather. Thus it appears that we have here no element of suddenness, as in the case of frostbite or heat stroke, but a gradual breaking down of a part of the body which could no longer resist the extremes of long continued cold and wet weather.

That there are some jurisdictions in which petitioner's sciatica might be construed as having been caused by accident, we do not deny. However, there are numerous jurisdictions in which contraction of disease in similar circumstances has been held not to be an accident and, therefore, not compensable. A brief summary of some cases from such jurisdictions may help to make clear what are the limits beyond which we cannot go in order to find that a personal injury has been received by accident within the meaning of that word in our statute.

Where a man was working in the sewers, was frequently in contact with sewer gas and, as a result, contracted enteritis, he was denied compensation on the ground that there was no proof of an accident. *Broderick* v. *London County Council,* 2 K. B. 807 (1908), 1 B. W. C. C. 219. Later in a similar though much closer case on its facts that case was unanimously followed. *Eke* v. *Dyke,* Ct. of App., Eng., 3 B. W. C. C. 482 (1910). Those two cases were decided before the enactment of our act in 1912, which this court has said was closely patterned after the English act. *Mingo* v. *Rhode Island Co.,* 41 R. I. 423, 426. Since those English cases represent the construction which the English act had received when our legislature may be said to have adopted it, they are of persuasive force in determining what was the

intent of our legislature in retaining the words "by accident" in our act.

Petitioner cites an Irish case, *Sheeran* v. *Clayton & Co., Ltd.*, 3 B. W. C. C. 583, which was decided in 1909 and which allowed compensation to dependents of a workman who contracted inflammation of the kidneys caused by cold brought on by working knee-deep in water in a millrace. The Irish Court of Appeal, in a very brief statement, affirmed the county court's award, which was based on the ground that the workman had died "from a sudden attack of uraemia and urinary poison, caused by the sudden impact of the cold water in which he was working." That case is not, in our opinion, like the instant one but, in any event, it is of doubtful authority now, since in 1914 the Irish Court of Appeal held, in a thoroughly considered opinion in *Finley* v. *Guardians of Tullamore Union*, 7 B. W. C. C. 973, that, under the authority of *Broderick* v. *London County Council, supra*, a workman who handled sewage from time to time in his work and thereby contracted typhoid fever did not receive an injury by accident. Although the *Sheeran* case was cited on behalf of the workman, the court of appeal did not refer to that case in its opinion.

There is an abundance of American cases in which it is held that, where a workman, in the ordinary course of his employment, contracts a disease merely from exposure to the weather without any unusual circumstances connected with such employment making him specially liable to the disease, there is no accident; and the disease is not compensable. See *Ferris' Case*, 123 Me. 193; *Lacey* v. *Washburn & Williams Co.*, 309 Pa. 574; *Osterritter* v. *Moore-Flesher Hauling Co.*, 150 Pa. Super. 236; *Moyer* v. *Union Boiler Mfg. Co.*, 151 Pa. Super. 477; *Biglin* v. *Pennsylvania Dept. of Labor*, 133 Pa. Super. 221; *Jeffreyes* v. *Sager Co.*, 198 App. Div. 446; *D'Oliveri* v. *Austin, Nichols & Co., Inc.*, 211 App. Div. 295; *Lerner* v. *Rump Bros.*, 241 N. Y. 153; *Sonson* v. *Arbogast*, 60 Idaho 582; *Stevens* v. *Village of Driggs*, 152 P. 2d 891 (Idaho).

In the last analysis we must be governed by our own statute and the facts in each case. In the instant case we are clearly of the opinion that there is no evidence of an injury *by accident* within the meaning of those words in our statute and, therefore, the trial justice was in error in awarding compensation.

The appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for entry of a decree in accordance with this opinion.

*Hinckley, Allen, Tillinghast & Wheeler, S. Everett Wilkins, Jr., Thomas J. Hogan,* for petitioner.

*Stephen A. Fanning,* for respondent.