In the Matter of the Claim of Flora Lerner, Respondent, against Rump Bros., et al., Appellants.

State Industrial Board, Respondent.

Workmen's compensation — master and servant — death from disease developed during course of employment — award not warranted unless inception of disease is assignable to determinate or single act of a catastrophic or extraordinary nature.

1. Two concurrent limitations have been placed on the right to recover an award under the Workmen's Compensation Law when a disease, not the natural and unavoidable result of the employment, is developed during the course thereof. The inception of the disease must be assignable to a determinate or single act, identified in space or time and it must also be assignable to something catastrophic or extraordinary. (*Matter of Jeffreyes* v. *Sager Co.*, 198 App. Div. 446; 233 N. Y. 535; *Matter of Connelly* v. *Hunt Furniture Co.*, 240 N. Y. 83, followed.)

2. Where the duties of an employee necessitated his going from a warm room into a refrigerator and staying therein for ten minutes, as a result whereof, it is claimed that he developed a cold resulting in his death, an award to dependents, under the Workmen's Compensation Law, on the theory that death was due to an accidental injury arising out of his employment, cannot be sustained. The exposure, although occurring at a definite time and place, was not catastrophic or extraordinary and the resulting cold would present itself as a disease and not as an accident.

*Lerner* v. *Rump Bros.*, 212 App. Div. 747, reversed.

(Argued October 6, 1925; decided October 20, 1925.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered May 28, 1925, affirming an award of the State Industrial Board made under the Workmen's Compensation Law.

*Merwyn H. Nellis* for appellants. A chill received during a ten-minute sojourn in a refrigerator is not an injury within the meaning of the act. (*Jeffreyes* v. *Sager*, 198 App. Div. 446; 233 N. Y. 535; *Richardson* v. *Green-*

*berg,* 188 App. Div. 248; *Connelly* v. *Hunt Furniture Co.,* 240 N. Y. 85; *Lyons* v. *Woodilee C. & C. Co.,* [1916] A. C. 719; *Eke* v. *Hart Duke,* [1910] 2 K. B. 677, 685; *Ismay, Imrie & Co.* v. *Williamson,* [1908] A. C. 437; *McMillan* v. *Singer Sewing Machine Co.,* [1913] A. C. 346; *Martin* v. *Manchester Corporation,* 5 B. W. C. C. 259; *Innes* v. *Kynoch,* [1919] A. C. 765.)

*Albert Ottinger, Attorney-General (E. C. Aiken* of counsel), for respondents. Claimant's husband died from the effects of an accidental injury. (*Brown* v. *Watson, Ltd.,* 7 B. W. C. C. 259; *Glasgow Coal Co., Ltd.,* v. *Welsh,* 8 B. W. C. C. 635; 9 B. W. C. C. 371; *Drylie* v. *Alloa Coal Co.,* 6 B. W. C. C. 398.)

POUND, J. The State Industrial Board made findings herein as follows: On the morning of June 2, 1923, Maurice Lerner was working for his employer in his employer's plant, and while showing fruit and vegetables to a customer of his employer in the refrigerator of said employer's plant, and because of the sudden transition from the super-heated atmosphere on the outside of said refrigerating plant to the chilly atmosphere in the interior thereof, and as his duties necessitated his remaining in said refrigerator for ten minutes, he received a chill that naturally and unavoidably caused a cold to develop which lowered his disease-resisting power, and as a result, pulmonary edema and cerebral embolism and septic endocarditis developed and caused his death on November 22, 1923; the proximate cause of death being the injury that he received in the refrigerator of his employer's plant on June 2, 1923. An award made on these findings has been affirmed by the Appellate Division.

The question is whether, on the facts found, the conclusion could be reached that Lerner's death was due to an accidental injury which arose out of his employment within the meaning of the Workmen's Compensation

Law.  Death was due to disease.  The disease was not
an occupational disease, the natural and unavoidable
result of the employment.  A distinction exists between
accidental injury and disease, but disease may be an
accidental injury.  The exception arises out of abnormal
conditions which must be established to sustain an award.
Two concurrent limitations have been placed on the right
to recover an award when a disease, not the natural and
unavoidable result of the employment, is developed
during the course of the employment, although it does not
follow that compensation should be awarded in all cases
coming literally within these limitations.  *First,* the
inception of the disease must be assignable to a deter-
minate or single act, identified in space or time.  (*Matter
of Jeffreyes* v. *Sager Co.,* 198 App. Div. 446; 233 N. Y.
535.)  *Secondly,* it must also be assignable to something
catastrophic or extraordinary.  (*Matter of Connelly* v.
*Hunt Furniture Co.,* 240 N. Y. 83.)  The principle has
been extended in England to include cases wherein pro-
longed and unusual exposure, although voluntary in its
character, has brought on pneumonia or rheumatism.
(*Coyle* v. *Watson, Ltd.,* [1915] A. C. 1; *Glasgow Coal Co.,
Ltd.,* v. *Welsh,* [1916] 2 A. C. 1.)  In these cases the
exposure was directly related either to an accident or to
an emergency independent of accident.  The nature of
the employee's risk was abnormal, not usual.  The
English act refers in terms to disease which is " a personal
injury by accident."  The English courts have, perhaps
for that reason, found it feasible to apply the rule:
" Whenever the causal connection between occurrence
and result be established " the principle of compensation
should prevail, but it has been applied only when the
occurrence was out of the ordinary and the result, although
not the natural result of exposure, might with little
difficulty be linked to the occurrence.  In this State the
*Jeffreyes Case* (*supra*) excludes cases of voluntary pro-
longed contacts resulting in disease from the field of

accidental injuries and somewhat narrows the English rule as broadly stated. In this case a causal connection is sought between the exposure to the cold of the refrigerating plant for ten minutes and the death of Lerner as a result. The temperature of the plant must have been less than the freezing point of fruits and vegetables and the outside temperature was probably not excessive on the 2d day of June. The exposure, although occurring at a definite time and place, was not catastrophic or extraordinary. It was like the exposure to drafts when one is heated while at work or to the change between the cold and wet outside and the warmth inside which is not unfrequently encountered by the workman after coming to his work in inclement weather. Such contacts of the body with the draft or with the changes of temperature are natural and normal and often unavoidable in the conduct of a business. A resulting cold would present itself as a disease and not as an accident.

While it may be difficult to make nice and exact discriminations between disease as an accidental injury and disease which is neither accidental nor an injury in the common acceptance of the terms, it is not difficult to distinguish a case of ordinary exposure resulting in a cold from a case of emergent, prolonged exposure. The definite event here is the change from a hot room to a cold one, as if one should step out of a hot room into the cold in the winter time without adequate protection. To call the sequent cold an accidental injury would be to distort the fair meaning of the statute and the underlying principle of compensation cases.

The order should be reversed, award of State Industrial Board vacated and the claim dismissed, with costs in this court and Appellate Division against State Industrial Board.

HISCOCK, Ch. J., CARDOZO, McLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Order reversed, etc.