(No. 6659.   September 28, 1939.)

CLARENCE W. SONSON, Appellant, v. C. W. ARBOGAST, Doing Business as GUERNSEY DAIRY, Employer, and STATE INSURANCE FUND, Surety, Respondents.

[94 Pac. (2d) 672.]

Elam & Burke, for Appellant.

Clarence L. Hillman, for Respondents.

AILSHIE, C. J.—This appeal involves a claim for compensation under the Workmen's Compensation Act.

For "a little over a month" appellant had been employed as a "plant man" by the Guernsey Dairy. His duties consisted of bringing in milk from the country to the dairy, unloading and weighing it, steaming milk cans, cleaning the pasteurizer, and loading out the milk. He worked "practically about an hour" in the steam room (temperature of about 160°, with live steam hotter); from there he went into the refrigerator room, where the temperature was 34 degrees. In the latter place he worked "from thirty minutes to an hour, depending on the amount of milk to be loaded." In the afternoon of August 21, 1938, appellant became suddenly and acutely ill and suffered from chills; he was taken home by his foreman. The next morning a physician was called and prescribed medicine; in the evening appellant was hospitalized and treated for "streptococcus pneumonia, advanced." He remained in the hospital about one month and was still under the physician's care at the time of the hearing.

October 1, 1938, appellant made application for hearing before the Industrial Accident Board and asked for an award of compensation on account of personal injury resulting from accident arising out of and in course of his employment with respondent. October 18th hearing was had and October 21st the board entered its order denying claim for compensation and dismissing claimant's application, from which this appeal is taken.

It is claimed by appellant that the board erred in holding:

"That the claimant's disability is the result of a disease, namely, streptococcic pneumonia; that the said disease is not the result of any personal injury resulting from any accident arising out of and in the course of claimant's employment with the defendant, C. W. Arbogast."

The only evidence there is as to the *cause* of the injury or disease (streptococcus pneumonia) from which claimant suffered, other than the mere description of *what* claimant did and *where* he worked, is the testimony of Dr. Bruce Budge, who attended claimant as his physician. His testimony on that phase of the case was very brief and is as follows:

"Q. Doctor, assume this claimant, Clarence W. Sonson, in the course of his duties with the Guernsey Dairy was required to and did go into a room in which they had a steam apparatus for steaming milk cans and he had to be in that steam and work there with hot water approximately an hour and during that time he would get rather warm, perspire, and immediately after he would be required to go into a refrigerator room where the temperature was about 34 degrees, and he would be there for some time and he had been doing that same thing for approximately a month prior to August 21st and have you an opinion as to whether or not that could bring about a condition of pneumonia as found by you on your examination of the claimant?

"A. In my opinion this sort of abrupt changes in temperature could unquestionably reduce the defense of the body to the point where pneumonia would be a natural consequence. We know medically that abrupt changes of temperature, for instance sitting in an overheated room and then going out in the cold, does precipitate definitely those infections of the respiratory tract and we consider many cases of pneumonia to be a direct consequence of over exposure.

"Q. What is your opinion in this case?

"A. I think the pneumonia was the direct consequence of his type of work."

In support of appellant's contention that an *accident* occurred in this case from which the injury (or disease) resulted, counsel cite the following cases decided by this court: *Bybee v. Idaho Equity Exchange*, 57 Ida. 396, 65 Pac. (2d) 730; *Wozniak v. Stoner Meat Co.*, 57 Ida. 439, 65 Pac. (2d) 768; *Riley v. Boise City*, 54 Ida. 335, 31 Pac. (2d) 968; *Suren v. Sunshine Min. Co.*, 58 Ida. 101, 70 Pac. (2d) 399.

A careful analysis of the cases above cited will disclose that none of them is direct authority for the contention that the

attack of streptococcus pneumonia from which appellant suffered was the result of an *accident*. In each of the cases mentioned there was either some noticeable mishap or fortuitous incident of which the employee was conscious and following which injury resulted; or else there was some sudden or manifest change in the conditions or surroundings under which the employee was working constituting the accident. Here nothing of the kind is shown. The conditions under which Sonson was working were the same throughout the entire period of his employment. He performed his work in the same manner from day to day and was conscious of no mishap, hazard, or fortuitous occurrence nor misadventure to him or on his part. Under such circumstances, to say there was an *accident* would be to distort all definitions of the word and do violence to the common understanding of the language used by the legislature in writing section 43–1809, I. C. A. (See *Moody v. State Highway Dept.*, 56 Ida. 21, 48 Pac. (2d) 1108.)

It is not an easy task for the board or the court to always discern the exact dividing line beyond which an incident or happenstance becomes sufficiently definite and localized as to time, place, and circumstance, that it may be legally designated an *accident*. The difficulty of the task, however, instead of relieving us of the duty, renders it the more imperative that we discharge it with a sound discrimination.

Examination of the authorities discloses that other courts and boards have deliberated under the same difficulty and have in some cases held that a disease (pneumonia, for illustration), has under some circumstances resulted from an "accident" (*Suren v. Sunshine Min. Co.*, 58 Ida. 101, 108, 70 Pac. (2d) 399; *Bybee v. Idaho Equity Exchange*, 57 Ida. 396, 401, 402, 65 Pac. (2d) 730; *Rinehart v. F. M. Stamper Co.*, 227 Mo. App. 653, 55 S. W. (2d) 729, 732; *Pow v. Southern Const. Co.*, 235 Ala. 580, 180 So. 288, 292; *Karp v. West 21st St. Holding Corporation*, 253 App. Div. 851, 1 N. Y. Supp. (2d) 399; *Warner v. Industrial Acc. Com.*, 10 Cal. App. (2d) 375, 51 Pac. (2d) 897; *Roth v. Locust Mt. State Hospital*, 130 Pa. Super. 1, 196 Atl. 924, 926; *Heisler v. Lincoln Realty Co.*, 121 Pa. Super. 516, 184 Atl. 305; *Broch v. Lehigh Valley Coal Co.*, 296 Pa. 502, 146 Atl. 899; *Jones v.*

*Philadelphia & Reading Coal etc. Co.,* 285 Pa. 315, 132 Atl. 122; *Dupre v. Atlantic Refining Co.,* 98 Conn. 646, 120 Atl. 288, 73 A. L. R. 542; *Alloa Coal Co., Ltd., v. Drylie,* (Scot. S.) 6 B. W. C. C. 398, 404; 20 A. L. R. 70; 71 C. J., sec. 342, p. 592, and sec. 350, p. 597, and cases cited in notes); while under different circumstances it was held not to have resulted from "accident" (*Lacey v. Washburn & Williams Co.,* 309 Pa. 574, 164 Atl. 724, 726; *Lanphier v. Air Preheater Corp.,* 278 N. Y. 403, 16 N. E. (2d) 382; *Hoag v. Kansas Ind. Laundry Co.,* 113 Kan. 513, 215 Pac. 295; *Doty v. Industrial Accident Fund,* 102 Mont. 511, 59 Pac. (2d) 782; *Allith-Prouty Co. v. Industrial Com.,* 352 Ill. 78, 185 N. E. 267; *Lerner v. Rump Bros.,* 241 N. Y. 153, 149 N. E. 334, 41 A. L. R. 1122; *Landers v. City of Muskegon,* 196 Mich. 750, 163 N. W. 43, 44, L. R. A. 1918A, 218; *Micale v. Light,* 105 Pa. Super. 399, 161 Atl. 600; *Gibson v. Kuhn Co.,* 105 Pa. Super. 264, 161 Atl. 456; *Peck v. Campbell, Inc.,* 251 App. Div. 914, 297 N. Y. Supp. 670; *D'Oliveri v. Austin, Nichols & Co.,* 211 App. Div. 295, 207 N. Y. Supp. 699; *Lyons v. Woodilee Coal & Coke Co., Ltd.,* (Scot. S.) 9 B. W. C. C. 655.)

A careful examination of the record satisfies us that this case falls within the holding of the latter line of authorities above cited and that the holding of the board, that no accident was shown, is sustained by the evidence.

We conclude that the board's order should be affirmed, and it is so ordered.

Givens, Morgan and Holden, JJ., concur.

Budge, J., took no part in the decision.