Messer, Appellant, *v.* Reading Company.

Argued December 11, 1940.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, RHODES and HIRT, JJ.

*Ralph M. Bashore,* for appellant.

*M. M. Burke,* for appellee.

OPINION BY CUNNINGHAM, J., January 30, 1941:

The claimant in this workmen's compensation case has appealed from a judgment of the court below entered in favor of the employer of her deceased husband, George Messer. Our examination of the record has convinced us the judgment should be affirmed, but not for the reasons stated by that tribunal.

The theory, as set forth in her amended claim-petition, upon which claimant sought compensation for the death of her husband was that on January 3, 1938, while in the course of his employment, as a boiler inspector, with the defendant railroad company, he was subjected to exposure and over-exertion in wet clothing, both of which were such contributory factors in his death, five days later, as to make it compensable. No details relative to the circumstances under which the wetting, and alleged exposure and exertion, occurred were set out in the petition, nor was it filed until more than eleven months after her husband's death.

The defenses set forth in defendant's answer and urged at the hearing were that decedent's death did not result from any "injury by an accident in the course of his employment," within the meaning of Section 301, of our Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §§411 and 431, and further, that no notice of the occurrence of any injury was given defendant, either within the period of fourteen days after the alleged accident, as specified in the first paragraph of Section 311 of the statute, as amended April 13, 1927, P. L. 186, or, indeed, within the period of ninety days prescribed in the last paragraph as the extreme limit of time within which a claimant must give notice of any alleged accidental injury, or "no compensation shall be allowed": 77 PS §631.

Due, probably, to the press of work, this case was not carefully tried by the referee, nor was it fully considered by the board and court below. Neither the referee, board, nor counsel seem to have noticed that the alleged injury was sustained subsequent to the effective date—January 1, 1938—of the Act of June 4, 1937, P. L. 1552, which made extensive changes (hereinafter considered) in the section invoked by defendant.

The referee, after several hearings, made no finding upon the question of notice to the defendant of the occurrence of the alleged accidental injury, but, on the issue whether decedent had sustained any injury by an accident, made the following finding of fact: "We find that the untoward incident of January 3, 1938, in that the decedent got wet while at work, was a contributory factor in causing his death on January 9, 1938." An award of compensation was accordingly entered in favor of claimant.

There is an unfortunate confusion in the testimony relative to the date upon which the wetting relied upon by claimant occurred. Claimant definitely and positively fixed the date as Monday, January 3, 1938, (22a)

and testified her husband returned to work on the 4th and 5th, but was put to bed with the grippe, and the doctor called, on the evening of the 5th. Nearly all the testimony introduced by defendant related to the circumstances under which decedent worked on the 5th. These discrepancies should have been straightened out by the referee, as the claimant was not represented by counsel at the hearings, or the record should have been remanded by the board.

Upon defendant's appeal to it, the board, in reversing the action of the referee, fell into the error of making findings with relation to the events of January 5th.

The writer of the opinion for the board correctly stated the issues before it in this language: "The appeal raises two questions for our determination; viz., (1) does the evidence warrant a finding that decedent met with an accident in the course of his employment, causing his death, and (2) was any notice given the defendant of said accident." After reviewing the testimony these findings of fact were substituted in lieu of those made by the referee:

"5. We find that the incident on *January 5, 1938,* when decedent got wet at work, was received as an incident in the usual course of his work and there were no unusual circumstances, exposure or exertion. (Italics supplied).

. . . . .

"7. That no notice of any accident or injury was given to defendant within the time prescribed by the Workmen's Compensation Act."

Unfortunately the writing commissioner quoted from, and apparently relied upon, the testimony of the witnesses, Billig and Paul, whose evidence related solely to the conditions under which decedent worked on January 5th. Upon the basis of these findings, the board dismissed claimant's petition and entered a disallowance of compensation.

Claimant's appeal to the common pleas was dismissed *solely* upon the ground of lack of notice to the employer within ninety days after the alleged accident. As we do not agree with the legal conclusion of the court below upon the question of notice, it is necessary to quote at some length from its opinion. The writer thus accurately stated the issues, as developed by the testimony:

"The theory of the claimant's case is that while in the employ of the defendant company, her husband was performing his duties as a boiler-inspector on January 3, 1938, and that he became wet from his feet to above his knees, and as a consequence he contracted 'grippe' which culminated in a heart attack causing death.

"The defendant, in answer to her petition, denied this theory, and set up additionally as a defense to the claim that no notice of the alleged injury to her husband was given to it within ninety days of such injury."

After pointing out that the board's finding was that there had been no accidental injury on January 5th, that claimant's proofs were confined to January 3d, whereas the defendant's testimony related solely to January 5th, and that the board had not, therefore, determined the issue relative to the happening of an accident, the opinion continued:

"However, this situation is unimportant and not vital because of the action of the board in finding as a fact that no notice of the alleged accident was given to the defendant within the time prescribed by the Workmen's Compensation Law.

"For the defendant, Mr. Billig testified that he visited the claimant's husband on January 6, 1938, and, 'I asked him what the trouble was. I asked him if he was hurt and he said "No"; he said "I think it is the grippe" and he said "I will get rid of this in a few days"; and that nothing was said by the deceased as to getting wet.' He testified also that Mr. John Smink and no

other person was present when the deceased made the quoted statement. Mr. Smink corroborated the testimony of Mr. Billig relative to the quoted declaration. The claimant testified that her husband told Mr. Billig on January 6, 1938, that he (her husband) 'got wet, very wet, at work.'

"Thus, it is evident that whether notice of the alleged accident was given to the defendant within ninety days after its happening or was not given, was a pure question of fact for the compensation authorities to determine.

"Finding that no notice was given, and the finding being based upon competent testimony, it is not within our province to disturb such finding. It follows that the board's second conclusion of law was correct.

"The Act of June 2, 1915, P. L. 736, as amended by the Act of June 4, 1937, P. L. 1552, prescribes that where there is a failure to give notice of an accident within ninety days of its occurrence, the right to compensation is forfeited."

An examination of the legislation just cited does not support the statement that a failure to give notice within ninety days forfeits all right to compensation.

Section 311 of the Act of 1915, supra, as amended by the Act of June 4, 1937, P. L. 1552, effective January 1, 1938, as printed at P. L. 1571, with eliminations indicated by brackets and insertions by italics, reads:

"Unless the employer shall have actual knowledge of the occurrence of the injury, or unless the employe or [some one] *someone* in his behalf, or some of the dependents or [some one] *someone* in their behalf, shall give notice thereof to the employer within [fourteen] *thirty* days after the accident, no compensation shall be due until such notice be given or knowledge obtained; but if the employe or other beneficiary shall show that his delay in giving notice was due to his mistake or ignorance of fact or of law, or to his physical or mental

inability, or to fraud, misrepresentation or deceit, or to any other reasonable cause or excuse, then compensation shall be allowed, unless the employer shall show that he did not know, and by reasonable diligence could not have learned, of the accident, and that he was prejudiced by the delay; in which case he shall be relieved to the extent of such prejudice, [and, unless such knowledge be obtained, or notice given, within ninety days after the occurrence of the injury, no compensation shall be allowed.]"

Giving full force and effect to the finding of fact that no notice was given the employer "within ninety days," it does not follow that claimant was barred from having her claim adjudicated upon its merits. The provision, that unless knowledge of the injury be obtained by the employer, or notice thereof given, "within ninety days ...... no compensation shall be allowed," was entirely eliminated by the Act of 1937, 77 PS (1938 Supp.) §631. The filing of the claim-petition was full notice to the employer. As the incidents upon which claimant based her claim for compensation occurred on January 3, 1938, subsequent to the effective date of the Act of 1937, and the petition was filed December 14, 1938, the most that can be said upon the question of notice in this case is that, if claimant should in all other respects establish her right to compensation, payments thereof could not properly begin prior to the date upon which the petition was filed. The court below erred in holding claimant's appeal to it should be dismissed because of the finding of the board that she failed to give notice to defendant of the alleged accident within ninety days after its occurrence.

The real and only question of law involved in this appeal is whether the finding of fact by the referee, to the effect that claimant's husband sustained an injury by an accident in the course of his employment on January 3, 1938, to which his death was attributable, rather

than to the culmination of a preexisting heart condition for which the defendant company was in no way responsible, is supported by substantial competent evidence.

Claimant had the burden of showing both an accident in the course of her husband's employment and a resultant injury: *Adamchick v. Wyoming Valley Collieries Company*, 332 Pa. 401, 3 A. 2d 377. Her claim is based upon an alleged external accident. It therefore becomes necessary for us to examine the evidence relative to the nature of his duties and the circumstances attendant upon their performance on January 3, 1938, for the purpose of ascertaining whether there was anything unusual about his work, or the manner in which it was performed on that day, or whether any unexpected, unforeseeable incident, outside of the usual course of events, occurred.

The testimony upon this record relative to the duties and activities of decedent upon the day in question is that of a fellow employee, William A. Bautsch, who drove him to work in the morning, worked with him during the day, and drove him home in the afternoon. After referring to an engine which had been placed in the roundhouse Bautsch continued: "Q. What was that particular engine doing in the roundhouse at that time? A. It was in for a boiler wash. Q. Do you know when it came into the roundhouse? A. I do not. Q. Do you know what work was done on it January 3d? A. I know my work, the work that Messer was doing. Q. What work was Messer doing? A. Inspecting, boiler inspecting as you call it. Q. What is the customary procedure on taking these engines out of service? A. The way I know it every thirty days the boiler has to be washed. Take the bolts out and put a hose in and wash them out. Q. Is that the particular reason this engine was in the roundhouse, for the thirty day inspection? A. Yes. Q. Do you know how long it re-

mained in there? ...... A. Three or four days. Q. What part of the inspection is the washing out of the boiler? A. The boiler above the firebox is a boiler with flues and put the hose in and wash it out. Q. Is that the first part of the procedure or latter part? A. The first thing. Q. Was Mr. Messer doing this particular work on this day? A. Doing the inspecting and also had to help in the washing. Q. Can you tell us what happened to him on January 3d, after he was inspecting this particular engine? A. I don't know what particular work you mean. He turned the water on and ran around the other side to get a wire to put it in the hole to open up to get the foreign matter and rust and like out. Q. What happened when he did that? A. He got wet down over the front. Q. Did you ever do this particular work? A. I did not. Q. Have you seen other men do it? A. I have. Q. Do they all get wet when they do it? A. Not all, no ...... Q. Coming back to January 3d, or the date you drove him to his work, it was the same work he usually had that you saw him do that day? A. Yes. Q. It wasn't a new work? A. No. Q. It was part of the work he was required to do? A. Yes. ...... Q. These boilers of course are cleaned on the inside with water? A. Yes, inside of that boiler and has to go in the firebox and inspect the boiler. Q. That is done to wash the accumulations from the boiler? A. Yes. Q. And that is part of the boiler cleaning work? A. Yes. Q. And it is the duty of the inspector to inspect and supervise that work? A. Yes. Q. And that was Mr. Messer's job? A. Yes. Q. That is correct, isn't it? A. Yes. Q. You saw him do that work often before? A. I did."

There is not a particle of evidence upon this record of the occurrence during the day of any emergency requiring any unusual exertion upon the part of decedent nor is there the slightest proof that there was anything unusual in the circumstance that decedent obtained and

inserted a wire in some part of the boiler in order to facilitate the removal of the "mud and scale" which had collected on its inside.

It is established by the testimony of claimant and of Bautsch that decedent during the course of his employment that day got his feet wet "to above his knees" and it is insisted by counsel for claimant that this circumstance, "not being the usual thing to occur," constituted an accident within the meaning of the statute.

The assertion that there was something unusual about an employee engaged in the work of washing out boilers getting his feet wet is not borne out by the record, in fact, the evidence is to the contrary. As above quoted, Bautsch testified he had seen other men doing this work and when asked, whether "they all get wet when they do it," his reply was, "not all, no." This answer it seems to us implies that most of them do get wet. Moreover, there is uncontroverted testimony that decedent was so accustomed to getting his feet wet "in his work of cleaning and inspecting of engines" that he kept rubber overshoes "right along in his locker."

This record will be searched in vain for any evidence, direct or circumstantial, indicating that any unexpected, unusual, or fortuitous, incident, outside of the usual course of events, happened upon the day fixed by claimant as the date of the alleged accidental injury. The testimony merely shows an employee engaged in the performance of his usual work in the usual way and without any unusual incidents. Decedent returned to work on January 4th and 5th and it was not until the conclusion of his work on January 5th that he developed any symptoms of illness.

As stated by the court below, claimant's theory was that her husband as a consequence of getting wet at his work "contracted grippe which culminated in a heart attack causing death." The referee found that

decedent's "getting wet" was not only an accident but also "a contributory factor in causing his death."

As we have found there is no evidence sustaining the finding that the wetting was the result of any "accident" in the course of decedent's employment, it is unnecessary, from a purely legal point of view, to consider whether there is any evidence supporting the referee's further finding that it was a contributory factor in his death. If the wetting was merely an ordinary incident in the day's work, the defendant is not legally liable for its consequences; it was not an insurer of decedent's health or life.

However, as claimant is entitled to know exactly why we have concluded the award made to her by the referee cannot be sustained, we shall consider the only testimony bearing upon the question of any possible connection between the wetting and decedent's death.

Dr. A. S. Jones, the attending physician, was called as claimant's medical witness. He testified he treated decedent on January 6th and 7th for grippe and gave a certificate of his death on January 9th—a certified copy of which was produced by defendant during the cross-examination of the witness.

This certificate contained no reference to grippe even as a contributory cause of death. The material portions read:

"22. ...... The principal cause of death and related causes of importance were as follows:

"Acute Cardiac dilatation, Date of onset, Jan. 9.

"Other contributory causes of importance: Myocardial degeneration.

"What test confirmed diagnosis? Physical Diag.

"23. If death was due to external causes (violence), fill in also the following:

Accident, suicide, or homicide? No.

"24. *Was disease or injury in any way related to occupation of deceased? No.*" (Italics supplied.)

The doctor's only attempted explanation of his last answer was that he thought the question referred to external violence, although external injuries are obviously comprehended in question No. 23. Upon cross-examination the witness thus amplified the formal certificate: "Q. What test did you make, Doctor, to confirm the diagnosis you made? A. You mean of sudden death? Q. Yes. A. Coronary occlusion anginal attack is the cause of death like that. They get an acute heart block and get an ventricular fibrillation. That is all there is to it. They die before you get to them. Q. That is the test you applied? A. Yes."

More than a year later this witness undertook to introduce a new contributory cause into the picture. While under examination by the referee he testified: "Q. Will you give us your opinion whether or not the wetting he was subjected to on January 3d had anything to do with the grippe you treated him for on the 6th and 7th? A. I would say the exposure to the wetting and cold and change of temperature is one of the things. Q. He died on January 9th? A. Yes. Q. You gave a death certificate as to the cause of his death? A. Yes. Q. What was that? A. He died of cardiac failure and acute dilatation ...... Q. Whether or not in your best professional opinion the wetting he was subjected to on January 3d contributed to his death on January 9th? A. I should say it did."

Upon further cross-examination, Dr. Jones admitted having been interviewed by Earl R. Kline, an assistant district claim agent of the defendant for twenty-five years, relative to the cause of decedent's death. An excerpt from his testimony reads: "Q. And Mr. Kline discussed with you Mr. Messer's illness and your treatment of him? A. Yes. Q. And the cause of death as you found it? A. Yes, by the certificate. Q. Did you state to Mr. Kline on the occasion of that visit that there was absolutely no relation between the cold and

grippe that Mr. Messer contracted and the cause of his death? A. I don't recall just that particular statement. I said he had the grippe; I said I don't say the grippe would kill the man per se. Q. You did discuss with Mr. Kline the cause of death? A. Yes. Q. And you did make that statement to him. A. Or to that effect. Q. Did you state to him that there was absolutely no connection between the cold or the grippe that Messer had contracted and the cause of his death? A. Possibly did. Q. Was Messer cured of this grippe or cold? A. His temperature was normal. Q. When you left him on the 7th. A. I told him he could go to work on Monday ...... Q. Did you tell Mr. Kline also on that occasion that all the evidence pointed toward a sudden heart attack that caused his death? A. I probably did. Q. Would you say so? A. I would say so that I probably did."

Of course the question of the credibility of this witness was for the board; we agree, however, that its characterization of his testimony as "unsatisfactory" and "evasive" was fully justified.

But as already indicated, in the absence of competent evidence that the wetting resulted from an "accident" in the course of decedent's employment, it is immaterial whether it was or was not a contributory factor in his death.

Even if we give claimant the benefit of every possible inference from the evidence upon this record, accepting all of Dr. Jones' testimony at its face value, the only findings it would support would be these: Claimant's husband, having a preexisting degenerative heart condition, was engaged on January 3, 1938, in washing and inspecting the boiler of a steam railroad engine, in the same general way he had been washing and inspecting such boilers for many years; it was not unusual for employees engaged in this work to get their feet wet during its progress; decedent got his feet and

the lower part of his trousers wet that day; three days later he developed grippe which contributed to a fatal heart attack on January 9th.

Under all the authorities, the claimant is not entitled to compensation in the absence of proof that the wetting resulted from the happening of some sudden, unexpected, emergency, or fortuitous event, amounting to an accident within the intendment of our Workmen's Compensation Act.

Appellant cites *Senlock v. Philadelphia and Reading Coal & Iron Co.*, 104 Pa. Superior Ct. 156, 158 A. 663, and *Heisler v. Lincoln Realty Company*, 121 Pa. Superior Ct. 516, 184 A. 305. These cases, however, are clearly distinguishable from the one at bar. In the Senlock case, the wetting resulted from an extraordinary and unusual exposure, while in the Heisler case the wetting of decedent's clothing was occasioned by the sudden breaking of a steam line. The present case is more comparable to *Micale v. Light and S. W. Ins. Fund*, 105 Pa. Superior Ct. 399, 161 A. 600, and *Waleski v. Susquehanna Collieries Co.*, 108 Pa. Superior Ct. 342, 164 A. 355.

The ground upon which we affirm the judgment in favor of the defendant is not the failure of claimant to give notice in accordance with the statute, but because the record contains no substantial competent evidence supporting the finding of the referee that the wetting received by decedent resulted from an accident sustained in the course of his employment.

Judgment affirmed.