## Decker, Appellant *v.* Perfection Laundry.

Argued November 16, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*J. Roy Lilley, of Lilley & Wilson,* for appellant.

*Paul E. Hutchinson, of Sherriff, Lindsay, Weis & Hutchinson,* with him *William M. Rosenfield,* for appellee.

OPINION BY STADTFELD, J., December 22, 1942:

This is an appeal from the order of the Court of Common Pleas of Bradford County, dismissing an appeal from the decision of the Workmen's Compensation Board, affirming the referee's findings of fact, conclusions of law and order disallowing compensation.

Susie Decker, the claimant in this case, is a seamstress engaged to operate a sewing machine in the laundry plant of defendant, Perfection Laundry. On May 13, 1940, claimant reported for work at her usual place of employment. The sewing machine which she operated was located in front of a window which could be opened for ventilation, and had been stationed in that position since September or October of the preceding year. When claimant reported for work at noon on May 13, the window behind her machine was open. At about 1:00 o'clock in the afternoon she closed the window because of a draft and walked to another part of the plant to get some work and bring it back to her machine. She returned shortly thereafter to find the window opened in such a position as to cause a strong draft. She tried but failed to find the manager or the assistant manager of the plant for the purpose of complaining about the window's being opened. Claimant however did not complain of the draft to her forelady who was on the premises, nor did she ask her permission to close the window, although it does not

appear that permission was necessary. Claimant ascribed her failure to close the window a second time to her desire to avoid a "tangle" with any of her coemployes. She continued to work at her machine in what she described as a "damp, heavy draft of cold air" until quitting time at 5:00 P.M. Claimant testified that during the last hour of work her neck started to feel "funny" as if the muscles were tightening up, congested or contracting. The muscles seemed to swell, and she got a pain in her back.

On the following morning claimant called a physician who diagnosed her condition as either neuritis or myositis. Two days later claimant went to the hospital where she remained approximately three weeks. Her attending hospital physician ascribed her disability to an acute myositis involving the cervical region of her neck, a condition stated by the physician to have been caused by her exposure to a draft on the afternoon of May 13, 1940. The referee made a finding of fact in accordance with this testimony.

The sole question for determination is whether the circumstances of this case constitute an "accident" within the meaning of Section 301 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §411, 431.

In *Parks v. Miller Printing Machine Co. et al.*, 336 Pa. 455, 9 A. 2d 742, an employe contracted pneumonia after working for eight days cleaning machinery on which he usually worked at a place which was damp and muddy by reason of the fact that the employer's factory had been inundated by flood. It was held that there was no "accident." In the course of the opinion by Mr. Justice STERN, a classification was made of the decisions of this court and of the Supreme Court in cases in which prostration is suffered, or disease is contracted as a result of exposure to excessive heat, cold or other unusual environmental conditions, with

a view to determining whether such circumstances can be said to constitute an "accident."

Appellant contends that the instant case falls within the second class of cases which the opinion states "consists of cases where the work or act performed by the employe is voluntary, and not marked by any abnormal or unusual feature, but where there occurs an unexpected and unusual pathological result; that is to say, where the accident resides in the extraordinary nature of the effect rather than in the cause" and then explains that "these (cases) rest upon the theory that the prostration is not the natural, probable and predictable result of an exposure to the prevailing conditions, but constitutes an extraordinary and unlooked-for mishap visited suddenly upon the employe while at work." A fair interpretation of the medical testimony of Dr. Conklin, even if the compensation authorities had accepted it, indicates that the appellant's condition resulting from the exposure to draft was unusually severe, and not that the condition (a rigidity of the neck muscles accompanied by pain) was an unusual result of an exposure.

It appears from appellant's own testimony that she had exposed herself to the draft for a continuous period of about three and one-half hours, from 1:30 P.M. to 4:00 P.M., that she first experienced a tightening of her neck muscles and pain in her back shortly before leaving work, but that the severity of her suffering developed progressively during the evening and night after leaving work. It did not come upon her suddenly. The compensation authorities found as a fact that appellant's sitting in the draft was a voluntary act, deliberate and protracted. The evidence supports this finding.

The fourth classification under the Parks case comprises "those cases where the exposure causing the pneumonia or similar disease is not only intentional

but deliberate and protracted, and in the regular course of the employe's work, and therefore there is no accident either in the happening of an untoward event, or in an unexpected and exceptional result, or in a chain of extraordinary events subjecting the employe to an exigent and unanticipated exposure foreign to his ordinary employment." Compensation has been refused in the following cases falling within this group: In *Lacey v. Washburn & Williams Co.,* 309 Pa. 574, 164 A. 724, where a carpenter, in the course of his work, made measurements in a refrigerator room, the temperature of which was exceedingly low, so that he suffered a chill and developed pneumonia, it was held that there was no accident, the chill being not the consequence of a fortuitous and unexpected event, but a natural and foreseeable result of the deliberate act which preceded and caused it; in *Mills v. Susquehanna Collieries Co.,* 107 Pa. Superior Ct. 432, 164 A. 69, where a minor, while waiting a routine period of five minutes to be taken up on an elevator, was subjected to an ordinary draft, and took a chill which turned into lobar pneumonia, there was no accident; in *Biglin v. Pennsylvania Department of Labor and Industry,* 133 Pa. Superior Ct. 221, 2 A. 2d 514, where a person working at a booth in a convention hall in which there were drafts and temperature fluctuations received a chill which resulted in influenza, there was no accident. See also, *Gibson v. Kuhn,* 105 Pa. Superior Ct. 264, 161 A. 456, and *Wilkins v. McSorley,* 119 Pa. Superior Ct. 442, 179 A. 759.

It is our opinion that the instant case falls within this group of cases and appellant is not entitled to compensation.

The order of the court below is affirmed.