LIBBY, McNEILL & LIBBY v. ALASKA INDUSTRIAL
BOARD et al.

No. 5682–A.

District Court of Alaska. First Division. Juneau.

June 13, 1947.

· R. E. Robertson, of Juneau, for plaintiff.

Ralph J. Rivers, Atty. Gen., and Frank L. Oliver, Asst. Atty. Gen., both of Juneau, Alaska, for Alaska Industrial Board.

· William L. Paul, Jr., of Juneau, Alaska, for Steve Chutuk.

FOLTA, District Judge.

This is a proceeding to review the decision of the Alaska Industrial Board, awarding compensation to Steve Chutuk for disability following a hemorrhage as a result of rupturing a blood vessel of the lungs during a fit of coughing which is said to have had its inception in a chill suffered by the employee on July 21, 1946, while in a refrigerator taking an inventory of the contents in the course of his employment as cook.

The employee testified that he noticed a cold a day or so after his exposure and that, although he felt better by the 1st of August, in the evening of the 17th he expectorated blood, and later the same day had a hemorrhage. The Alaska Industrial Board found that the claimant suffered a chill from the low temperature in the refrigerator and that this resulted in the cold and cough; and further, that the long hours worked, because of a shortage of help, constituted unusual circumstances which resulted in the homorrhage.

Libby, McNeill & Libby, hereinafter referred to as the employer, resists the payment of the award on the ground

that there was no accidental injury within the purview of the Alaska Workmen's Compensation Act, Ch. 9, S.L.A. 1946, section 38 of which defines injury as: "An injury by accident arising out of and in the course of employment, including any disease proximately caused by the employment, which is due to causes and conditions that are characteristic of and peculiar to a particular trade, occupation, process or employment, and to exclude all ordinary diseases of life to which the general public are exposed."

Upon the argument, the parties agreed that the sole question was whether the chill, with the subsequent cold and cough from exposure to a temperature of about 10 degrees above zero for approximately 30 minutes in the refrigerator of the employer, was an accidental injury.

■■ Obviously the hemorrhage cannot be considered as a separate and independent injury for it had its inception in the chill. Notwithstanding this, however, the Board found that the hemorrhage was due to the long hours of employment which, it held, constituted unusual circumstances, citing United Paperboard Co. v. Lewis, 65 Ind.App. 356, 117 N.E. 276. The evidence shows that the claimant worked seven days a week and that his overtime for July amounted to 79 hours. An examination of that case, however, shows that it is not at all in point. It is also clear that the rupture of a blood vessel in the lungs was caused by coughing and not by any physical strain or effort or the performance of any act in the course of the employment. It may be conceded that working overtime may result in overexertion or fatigue, but in the case at bar there is no causal connection between overtime and the hemorrhage. Gillett v. Prairie Brass & Metal Co., Mo.App., 179 S.W.2d 494. Far from constituting an unusual condition, overtime was the rule and every day was the same so far as time worked is concerned. Whether the coughing was aggravated by the overtime would seem to be wholly speculative and conjectural.

The employer relies on Lerner v. Rump Bros., 1925, 241 N.Y. 153, 149 N.E. 334, 335, 41 A.L.R. 1122, where the

employee Lerner, in the course of his employment, went into a refrigerator for 10 minutes, suffered a chill which was followed by a cold, complications and death. The question presented was identical with that under consideration here. The court said that when the disease is not of the occupational type there are two concurrent limitations on the right to an award, namely, (1) the inception of the disease must be assignable to a determinate or single act identified in space or time; and (2) it must be assignable to something catastrophic or extraordinary. Continuing the court said: "The exposure, although occurring at a definite time and place, was not catastrophic or extraordinary. It was like the exposure to drafts when one is heated or the change between a cold and wet outside and the warmth inside [frequently] encountered by workmen * * *. Such contacts * * * with the draft or with the changes of temperature are natural and normal, and often unavoidable in the conduct of business. A resulting cold would present itself as a disease and not as an accident. While it may be difficult to make nice and exact discriminations between disease as an accidental injury and disease which is neither accidental nor an injury * * *, it is not difficult to distinguish a case of ordinary exposure resulting in a cold from a case of emergent, prolonged exposure."

The rule which seems to have been evolved and is recognized in nearly all jurisdictions is that a disease to be an injury by accident must be traceable to a definite time and place of origin and must moreover not be the ordinary result of an employee's work reasonably to be anticipated as a result of pursuing the same but contracted as a direct result of unusual circumstances connected therewith. United Paperboard Co. v. Lewis, 65 Ind.App. 356, 117 N.E. 276; Barron v. Texas, Employers' Ins. Ass'n, Tex.Com.App., 1931, 36 S.W.2d 464; Christian v. State, 1920, 191 App. Div. 635, 182 N.Y.S. 347; Galluzzo v. State, 1930, 111 Conn. 188, 149 A. 778; General Printing Corporation v. Umback, 1935, 100 Ind.App. 285, 195 N.E. 281; Pirillo v.

Barber Asphalt Co., 1940, 140 Pa.Super. 334, 13 A.2d 906; Goodman v. Industrial Comm. of Ohio, 135 Ohio St. 81, 19 N.E.2d 508; Messer v. Reading Co., 1941, 143 Pa.Super. 240, 18 A.2d 75; Good v. Pennsylvania Dept. of Property and Supplies, 1943, 346 Pa. 151, 30 A.2d 434; Gillett v. Prairie Brass & Metal Co., Mo.App., 1946, 179 S.W.2d 494; Lohndorf v. Peper Bros. Paint Co., 1946, 134 N.J.L. 156, 46 A.2d 439; O'Neil v. W. R. Spencer Grocer Co., 1946, 316 Mich. 320, 25 N.W.2d 213; Radcliffe v. Southern Aviation School, 1946, 209 S.C. 411, 40 S.E.2d 626; Cardwell Mfg. Co. v. Thomas, 1943, 192 Okl. 143, 134 P. 2d 562; Lowrie v. American Surety Co., 5 Cir., 1944, 146 F.2d 33; City of Tallahassee v. Roberts, 1945, 155 Fla. 815, 21 So.2d 712; Walters v. City of Weiser, 1945, 66 Idaho 615, 164 P.2d 593; Landers v. Muskegon, 1917, 196 Mich. 750, 163 N.W. 43, L.R.A.1918A, 218; Sonson v. Arbogast, 1930, 60 Idaho 582, 94 P.2d 672.

It was applied to factual situations identical with or substantially similar to that in the case at bar in Lerner v. Rump Bros., supra; Lacey v. Washburn & Williams Co., 1933, 309 Pa. 574, 164 A. 724; Lanphier v. Air Preheater Corporation, 1938, 278 N.Y. 403, 16 N.E.2d 382, in which Lerner v. Rump Bros., was followed; Allith-Prouty Co. v. Industrial Comm., 1933, 352 Ill. 78, 185 N.E. 267; Osterritter v. Moore-Flesher Hauling Co., 1942, 150 Pa. Super. 236, 27 A.2d 262; Moyer v. Union Boiler Mfg. Co., 1943, 151 Pa.Super. 477, 30 A.2d 165; Stevens v. Village of Driggs, 1944, 65 Idaho 733, 152 P.2d 891; Decker v. Perfection Ldry., 1942, 151 Pa.Super. 94, 29 A.2d 429; Mills v. Susquehanna Collieries Co., 1933, 107 Pa.Super. 432, 164 A. 69; Sonson v. Arbogast, 1939, 60 Idaho 582, 94 P.2d 672.

To the contrary are Robbins v. Enterprise Oil Co., 1937, 252 App.Div. 904, 299 N.Y.S. 837, where the death of a mechanic, who, in changing gears in an automobile, was required to lie on his back on the cement floor of a garage about three hours where he was subjected to draft and as

a result sustained a chill, contracted pneumonia and died, was held to be the result of accidental injury and compensable; Tweten v. North Dakota Workmen's Compensation Bureau, 1939, 69 N.D. 369, 287 N.W. 304, where death from pneumonia originating in a cold not attributable to an accident or unusual condition of employment, was held compensable; and Hoage v. Employers' Liability Assurance Corporation, 1933, 62 App.D.C. 77, 64 F.2d 715, in which it was held that numbness of a foot following a routine inspection of seven cool rooms in which the temperature ranged from zero to 22 below, which the employee was required to make every two hours and which took 15-20 minutes to make, followed by complications and disability, was a compensable injury. It should be noted, however, that in this case there was no question of causal connection between the exposure and the numbness because such numbness was the invariable experience of the employee upon the completion of each inspection trip. Moreover, federal decisions follow the English rule which is more liberal, but even the English cases distinguish between exposure that is not expected, intended or designed, from one that is a normal incident of the employment, and thus give effect to the general rule. Compare Lyons v. Woodilee Coal & Coke Co. (Eng.) 86 L.J.P.C.N.S. 137-H.L. with Coyle v. Watson (Eng.) [1915] A.C. 1-H.1; 41 A.L.R. 1128.

There are also decisions in which the disease itself is held to be the injury, but an examination of them reveals that in each case there was actual physical injury, as distinguished from a chill, resulting from unusual physical effort or strain.

■■ If in the case at bar the employee had suffered a hemorrhage as the immediate and direct result of unusual physical strain or effort in the course of his employment, the injury would be compensable under the authorities supporting this rule regardless of any aggravation by a cough, cold, overtime or weakened physical condition; but since a chill experienced upon encountering a low temperature is a common experience and more often than not is not followed by

any untoward consequences, it is my opinion that a chill is not an injury even under these authorities. It is not unusual to attribute a cold to some event or condition which happens to coincide with its inception or first symptoms. The difficulty of determining the place of infection or the cause of a nonindustrial disease, including a cold, is undoubtedly the reason that a causal connection must be shown under the Workmen's Compensation Acts between such disease and some unusual event or condition of employment as a prerequisite to recovery of compensation; but assuming that in this case a causal connection between the temperature and the chill has been shown, (and on this point the finding of the Board is not against the weight of evidence and hence is conclusive on this court) there is no evidence of any unusual circumstances' or condition of employment to which the temperature or chill may be attributed, from which it follows that it was not an injury by accident within the meaning of the statute, and the rule sustained by the overwhelming weight of authority. To hold otherwise would be to require compensation in every case where a cold, regardless of where or how contracted, was followed by illness or death, for it would be rare indeed that a cold could not be attributed to some usual or normal condition or incident of employment with which its inception happened to coincide in point of time.

Accordingly the decision of the Board is reversed.