█ In the Matter of the Claim of VIRGINIA G. BROCKLEBANK, Respondent, v. UNION CARBIDE INTERNATIONAL COMPANY et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal by the employer and carrier from a majority decision of the Workmen's Compensation Board awarding death benefits to the widow of a deceased employee. The issue of accident only is presented. (Workmen's Compensation Law, § 2, subd. 7.) Deceased, aged 53 years, a sales director whose work frequently required air travel died in a hospital in Durban, South Africa, on October 24, 1958 while on an overseas business trip. About 20 years earlier pulmonary tuberculosis had necessitated the performance of a thoracoplasty with practically complete collapse of the right lung. X rays taken then and subsequently disclosed slight fibrosis in the left lung. Deceased's medical record indicated a history of asthma. It is not disputed that the collapse of one lung and the presence of scar tissue in the other had reduced his pulmonary reserve to 50% of its normal capacity. On October 10, 1958 deceased left New York City by plane reaching London, England, on the following day: on October 12, he departed therefrom for Johannesburg, South Africa, a city having an elevation above sea level of about 6,000 feet, arriving there in the late afternoon of October 13; en route the plane put down at Kano; during the London to Kano leg of the journey deceased complained to a traveling companion that he had not slept well; between Kano and Johannesburg he had difficulty in breathing; in aid of respiration a stewardess furnished him with a small tank of oxygen and a mask; there was no evidence that deceased previously had been so affected by plane travel or that other passengers had experienced similar anoxia; during the night spent in Johannesburg he felt uncomfortableness but oxygenation equipment was not then available; at a business conference attended on the following day oxygen to improve his pulmonary insufficiency was again provided; on the evening of October 14 he flew at an altitude of 15,000 feet to Capetown, a city at sea level, arriving there in the late evening; although he seemed to be more comfortable, a company official there noted that he was breathing laboriously and coughing considerably; these flights were made in pressurized cabins; on

October 13 he proceeded by nonpressurized plane flown upon decedent's request at the lowest permissible altitude to Durban where he remained bedfast throughout the next day; on October 20 it was observed that his physical condition had deteriorated and on October 21 a physician called to attend him found that he was gravely ill with bronchopneumonia in the left lung; on the following day he was hospitalized; without loss of his cyanosis he died on October 24; the terminal diagnosis was "cor pulmonale, congestive cardiac failure, lobar pnuemonia left lung." Though not in question here deceased's medical expert expressed an unqualified opinion as to causal relationship. Essentially his thesis was that the inability of deceased's inadequate respiratory system to cope with the cumulative oxygen deficiency occasioned by high altitude plane travel so lowered his resistance to pneumococcic infection as to result in its fatal consequence. A medical expert for the carrier opined that death would have occurred at the same time and in the same manner regardless of the environmental conditions which deceased experienced. Neither witness had attended deceased and, of course, their opinions were based upon propounded hypotheses. However, the attending physician in Durban in a letter to the medical director of the employer in evidence by stipulation stated: "He [deceased] would appear to me, to have developed his [p]neumonia in Johannesburg and to have carried on with his job." On the undisputed facts of this case we think that it was not unjustifiable for the board to reach the conclusion that death was due to an accidental injury within the meaning of the Workmen's Compensation Law. The oxygen deficiency encountered by deceased on the plane trip from Kano to Johannesburg and during his stay in the thin atmosphere of the latter city, to which the inception of the fatal disease was shown by substantial evidence to be attributable, could be regarded by the law's common man as a definite, extraordinary incident identifiable in point of time thus sufficing the well-recognized conditions necessary to be demonstrated to link a nonoccupational disease with the occurrence of accidental injury. (*Matter of Masse* v. *Robincon Co.*, 301 N. Y. 34; *Matter of Lerner* v. *Rump Bros.*, 241 N. Y. 153.) Decision and award affirmed, with costs to the Workmen's Compensation Board. Coon, J. P., Gibson, Reynolds and Taylor, JJ., concur; Herlihy, J., dissents: I am in agreement with that part of the memorandum decision of the dissenting member of the board, as follows: "The record presents no substantial evidence as to when the decedent contracted the pneumonia; that assuming he developed the pneumonia as a result of his airplane trips, there is no evidence of any catastrophic occurrence which might be classified as accidental within the meaning of the law and as interpreted by the Courts. It is further my opinion that the need for oxygen was necessitated by the decedent's pre-existing lung and heart pathology." It appears that traveling in airplanes was a common occurrence for the decedent in the performance of his work and that the plane on October 13, 1958 was properly pressurized. The events associated with this trip demonstrate nothing catastrophic or extraordinary. The death of the decedent was due to the progression of his long-standing illness and the record indicates that the use of oxygen by the decedent on that particular flight was ascribed to his pulmonary condition. He started his trip by air travel on October 10, flying intermittently through October 18. He died on October 24. The claimant's medical testimony, based entirely upon a hypothetical question, does not establish a basis of causation upon which to predicate the happening of an accident. The record does not sustain the finding by the board that he suffered an accidental injury on October 13, 1958. I would reverse the decision and dismiss the claim.