■ In the Matter of the Claim of ROSE C. D'ANGELO, Respondent, v. LOFT CANDY CORP. et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— SWEENEY, J. Appeal by the employer and insurance carrier from decisions of the Workmen's Compensation Board, filed November 8, 1968 and March 6, 1969. Claimant worked for Loft Candy Corporation as a machine operator from August, 1954 to November, 1967. All during this period she performed the same duties. She was required to pick up boxes weighing on an

average of 30 pounds and deposit them on a conveyor line above her head. This operation involved twisting of the back down to the lower trunk region. Claimant began having back trouble in 1962 and received treatment at a clinic, but did not lose time from work until 1964. Periodically, for the next three years, she had back pain, received medical attention and lost time from work. On May 15, 1967 she filed a claim for disability benefits which was rejected by the union's carrier as being a compensation claim. A workmen's compensation claim was thereafter filed on June 7, 1967. After hearings the Referee determined that claimant had an occupational disease for low back derangement and established disability as of May 1, 1967. The board, in affirming, found there is a recognizable link between claimant's low back derangement in the nature of lumbosacral arthritis and the nature of her work activities. Appellants maintain this finding is erroneous as a matter of law. Appellants argue that arthritis is not peculiar to the candy trade but attacks people in all walks of life and, therefore, is not a condition which is occupational in nature, as contemplated by the statute, citing *Matter of Detenbeck* v. *General Motors Corp.*, (309 N. Y. 558, 561.) Appellants further argue that claimant's pre-existing arthritic condition prevents a determination of occupational disease, since the type of work claimant was doing, at most, aggravated this condition. With these arguments we do not agree. The law is well settled that it is the type of employment at which a claimant actually works that is determinative, and not employment in the industry generally. (*Matter of Goldberg* v. *954 Marcy Corp.*, 276 N. Y. 313, 318–319; *Matter of Detenbeck* v. *General Motors Corp., supra*, p. 560.) This court has previously held that a predisposition to an occupational disease does not prevent him from having the benefit of workmen's compensation if the employee develops what would ordinarily be such a disease. (*Matter of Wehlong* v. *Ford Motor Co.*, 7 A D 2d 175.) In the instant case, Dr. Etkind, an orthopedic surgeon, reported, "the type of work she was doing may well be a factor in causing her to have back pain." He testified in substance that the underlying arthritis, with the work she was doing, could well be the causative factor of the pain and disability. Considering the entire record, and particularly the fact that claimant's employment necessitated constant lifting and twisting of the back, we cannot disagree with the Board's finding that this was an occupational disease. With respect to appellants' argument that the application was not timely made, it is most significant that the first definite diagnosis of lumbosacral arthritis was May 1, 1967, the date found by the board as the date of disablement. There is no reason to disturb this finding. (*Matter of Scimeni* v. *Wellbilt Stove Co.*, 32 A D 2d 364, 366.) Decisions affirmed, with costs to the Workmen's Compensation Board. Cooke and Sweeney, JJ., concur in a memorandum by Sweeney, J.; Reynolds, J., concurs in a separate memorandum; Herlihy, P. J., and Greenblott, J., dissent, and vote to reverse and dismiss the claim, in a memorandum by Herlihy, P. J. Reynolds, J. (concurring). Certainly arthritis, attributable to or activated by work activities (see, e.g., *Matter of Gilberti* v. *Joanne Garment Mfg. Co.*, 32 A D 2d 865; *Matter of Rocha* v. *Otis Elevator Co.*, 279 App. Div. 829; *Matter of Danley* v. *General Drop Forge*, 272 App. Div. 985; *Matter of Peloso* v. *D'Alessio Bros.*, 272 App. Div. 984), and also myositis (see *Matter of Tisko* v. *General Aniline & Film Corp.*, 27 A D 2d 619) could, on a proper record, be found to be occupational diseases. Dr. Etkind's medical report of November 28, 1967 could clearly be found to attribute claimant's condition to the nature of her work, and his brief testimony before the Referee supports this conclusion, albeit not as definitively as the report. There is, however, in his brief testimony no indication that he did not hold the condition occupational as his earlier report clearly states. He testified that it was claimant's work which required her to constantly bend and

twist her back together with her underlying arthritis that caused her disabling back condition. He did not state that the underlying arthritis was merely aggravated by the employment activity, but even if he had, affirmance would be indicated in this case. If any logical pattern is to be made of the decision in *Matter of Roettinger* v. *Great Atlantic & Pacific Tea Co.* (17 A D 2d 76, affd. 13 N Y 2d 1102) and the cases which have followed it (see, particularly, *Matter of Benware* v. *Benware Creamery*, 22 A D 2d 968, affd. 16 N Y 2d 966), then this case should be found to constitute an occupational disease unless we are about to say that no arthritic condition, unless it is actually contracted on the job, can be found to be an occupational disease. This we have not done and, in fact, as noted above, we have already held to the contrary. Of course, claimant's predisposition, her underlying arthritic condition, would not preclude her from receiving benefits (*Matter of Wehling* v. *Ford Motor Co.*, 7 A D 2d 175). Nor is *Matter of Snir* v. *J. W. Mays, Inc.* (19 N Y 2d 373), apposite here since the difficulty present in the instant case is clearly the result of a work activity which all similarly employed are engaged in and not solely of a working condition peculiar to the individual employee, not a failure to provide a safe place to work. Finally, I cannot accept that an "accident" could possibly be found here, despite the latitude and extension in this area since it is not assignable to a determinate or single act, identified in space or time, and since there is nothing catastrophic, extraordinary or precipitous, either in the onset or the result (e.g., *Matter of Lerner* v. *Rump Bros.*, 241 N. Y. 153, 155; *Matter of Hoare* v. *Great Atlantic & Pacific Tea Co.*, 8 A D 2d 561). Herlihy, P. J. (dissenting). I disagree with the majority statement, but even if accepted, it does not establish the fact that there was an occupational disease and compensable disability as the result thereof. From reading the record it is possible to deduce that medically there is support for finding an aggravation of a pre-existing condition and the possibility of an accident; or an exacerbation of a pre-existing endogenous condition; or a finding of both conditions which would not constitute an occupational disease. The claimant's doctor diagnosed the condition as "lumbosacral arthritis with paralumbar myositis". When he testified he agreed with the diagnosis in the hospital record that claimant suffered from osteoarthritis of the lumbar spine and that it had been present in the claimant's back since 1962 and possibly before, and was an endogenous condition. He found "that the underlying arthritis which she did have with the work that she described doing, superimposed upon it would be the causative factor of the pain and disability she would have". This statement does not attribute the arthritic condition to her work, but at most suggests that the work might cause pain which he said could be caused either by "pinching upon a nerve causing an irritant factor" or "irritation of the muscles", which accounts for his using the medical term "paralumbar myositis". Myositis is defined as "inflammation of muscle tissue, generally due to traumatism, to contiguous inflammation, diathetic states, or to parasites". (Taber's Cyclopedic Medical Dictionary, 7th ed.) Further reliance is placed upon the following answer by claimant's doctor to a hypothetical question as to his finding and diagnosis and the work described by the claimant: "The testimony as given by the patient may be a factor in causing her to have the back disturbance that she has." The doctor did not associate the arthritic condition with her employment except as generalized above and never associated her condition with her work as being an "occupational disease" as distinguished from "non-occupational disease" or "accident". The cases relied upon by the majority are no precedent for this case. If the claimant became disabled because her work aggravated her arthritic condition, there is no basis for a recovery since the arthritis itself was in no way work connected. If her work together with the arthritic condi-

tion caused her back muscles to become inflamed (myositis), it might be the basis for a claim of "accident", but the court is venturing far afield on the present record in affirming a finding of occupational disease. If there is to be any reasonable and logical distinction under the compensation law between "accident" and "disease", the present decision must be reversed. The Attorney-General suggests that "myositis" was held to be an occupational disease, but his reliance upon *Matter of Tisko* v. *General Aniline & Film Corp.* (27 A D 2d 619) is misplaced. The question there decided by this court concerned the "rate issue". The present record does not support a finding of occupational disease. (See *Matter of Snir* v. *J. W. Mays, Inc.*, 19 N Y 2d 373.) The decision of the board should be reversed and the claim dismissed.